Porter J.
delivered the opinion of the court.* This case has again come before us, on an appeal from the judgment of the inferior court, confirming the appointment of syndics.
The first question presented is, that the *158 matters and things now in dispute have already been adjudicated on between the parties, and have acquired the authority of res judicata. The opinion, formed on the whole case, renders it unnecessary to examine this point.
East'n District.
July, 1822.
The next error is, that the opposition to the votes, should have been made before they were received by the notary, and in support of this 10 Martin, 59, has been quoted. The same reason which prevents the plea just mentioned from being decided on, induces us to refrain from entering into this. It may not, however, be improper to remark that the opinion of the court there, was merely intended to express the effect which a want of opposition to a vote before the notary public, had, as to the regularity of voting at all, and left untouched the right which each had, to make opposition before the court and have the facts, which they might choose to put at issue, tried in due course of law.
That opposition has been made here; the parties were at issue in the district court, and went to trial on it; we shall, therefore proceed to examine the different claims presented.
It is laid down as law, by the Spanish writers, and it has been decided by this court *159 that in cases of insolvency, the acknowlegement of an instrument in writing, and confession of debt, on the part of an insolvent, is proof sufficient to establish the debt as against him, but not against the creditors ; for it is presumed to be fictitious, and made with a deliberate intention to elude these rights, and though it should appear by a note of hand, it does not prove its legitimacy; and for this reason he, who does not prove his debt by other means, ought not to be considered as a true and lawful creditor. Febrero, juicio de concurso, lib. 3, cap. 3, § 1, no. 33. 3 Martin, 707.
From this principle, it results that all claims given at the meeting, in this case, to which opposition has been made, and which are proved only by the production of the insolvent’s notes, and the oath of the creditors who hold them, must be rejected. Still less, can we admit claims that are established on weaker evidence; such as those which the witnesses do not speak from their own knowlege, but from hearsay.
On the part of Chiapella, Labatut and Tricou as syndics, there voted the following persons to whom no objection has been made, or *160 whose right is clearly established, viz: Macarty, Chiapella, Labatut, Guidel and Malus; the amount of their debts, when added together, is $120,115 76 cents.
In favor of Chabaud and Percy, there are the votes of Old & Co., Habine, Gros, Dennistoun, Hill & Co., and Townsley & Co., which are either admitted to be correct, or have been substantially established: their aggregate amount is $17,616 69/100.
On the part of the syndics who had the majority, there were two claims against the insolvent’s estate, on which Caisergues and Madame Lanusse voted—they require a particular examination.
And first, as to that of Caisergues; he voted at the meeting for the sum of $24,520, declaring in his affirmation, that the debt due him was founded on fourteen notes endorsed by Lanusse, for the sum of $30,650, on which sum he had received from Tricou & fils, $6130. Before the trial was had on the opposition made, he surrendered to the persons last mentioned, all the notes on which he voted, and he was received as a witness to prove the amount due him, at the time the concurso took place before the notary. A bill of ex *161 ceptions was taken to his testimony, but it has been abandoned before this court.
The notes produced in support of this claim were in number, nine. Six drawn by Tricou & fils, and endorsed by Lanusse for $14,000, three by Dutillet & Sagory to the order of Lanusse, for $9000, with his indorsement, together with protest made at the request of Caisergues.
We think this testimony is sufficient. The oath of the witness corresponds with the declaration he made when voting, that they were notes indorsed by Lanusse. There is a variance, it is true, between the description given by him of the papers delivered to Tricou, and those produced on trial, but that description is not stated in positive terms, nor can we believe him unworthy of credit. From the amount of the notes produced, there must be deducted $6130, which he states in his original declaration, he received on account of the obligations held by him. This leaves a balance due of $16,870, for which sum he is entitled to vote.
The next is the claim of the wife of the insolvent, which has been most obstinately disputed.
*162 She has attempted to establish it—by the last will and testament of her father—by the inventory of the property left at his decease—by an account current between her husband, and B. Macarty her brother, in their capacity of testamentary executors of her ancestor, J. B. Macarty—by sales between his heirs of different portions of the property descended to them—and by various deeds made by the executors aforesaid, in which they state the objects sold by them to have proceeded from the estate of her father.
To this it is objected.
1st. That she has not renounced the community of acquests and gains.—Second, that the books of her husband produced by her shew that only $45,000 were due, and that she must be bound by evidence which she has presented in support of her claim. Third, that the documents on which she relies are the acts of third persons and cannot affect or conclude those who were strangers to them, and that she cannot have the benefit of the whole price of the sale of the plantation and negroes to her brother, because it was in his possession and that of her husband for years before this transfer, and that no evidence has been offered to shew whether the great in *163 crease which has taken place in its value has proceeded from a rise in the property, or from improvements made by the community. In support of the presumption that it results from the latter, they rely on an act introduced by Mrs. Lanusse, which establishes that thirty-four negroes were purchased by Lanusse and Macarty, during the partnership, and placed on the plantation.
I. The renunciation of the community. This point, made by one of the counsel for the opposing creditors, was not much insisted on by the others. It seems to us that the general principle of our law is, that the wife’s property should not be made responsible for the husband's debts,—that the provision in the Civil Code, which requires her in case of his death to renounce within a certain time, is an exception to this principle—that it ought not to be extended beyond the case there put, and that the rule there contained in the 88th article, page 342 of the same work, which declares that in case of a separation of property she may accept, has a much stronger analogy to that now before us.
II. The introduction of the books of her husband, and whether the statement there *164 made is conclusive of her rights? We think not. The general principle is as stated by the opposing creditors, but this case offers an exception to it. The account shews, that by an account regulated between the executors of her father, the sum of $45,000 was due to each of the heirs; which sum resulted in a great part from the sale of a plantation made by the executors to themselves. This evidence cannot, in our opinion, prove that sale, which from the nature of things, was impossible, and from positive regulations, illegal, 11 Martin, 292; the rule therefore relied on, must yield to the more imperative mandate of the law, which will not suffer a married woman to alienate her immoveable property without certain solemnities, among which is not enumerated, the introduction of testimony such as this, on the trial of a cause.
III. The most difficult question this claim presents is, whether she has made sufficient proof that any thing is due to her, and if any, how much. The property was paraphernal, and it is true that the husband is only responsible in case it come into his possession, and was enjoyed by him. Civ. Code 334, art. 61 and 62, Febrero, juicio de concurso, lib. 3, cap. 3, § 1, no. 49, par. 4, tit. 11, l. 17.
*165 We have already seen that the simple acknowlegement of the debtor, or his signature to a note is not sufficient to enable a creditor to vote. Febrero, in the number next succeeding that cited in support of this doctrine (no. 34,) states, that when with this confession concur "otros adminiculos," other circumstances, which destroy the presumption of fraud, this evidence will be sufficient to make the persons adducing it considered as real and bona fide creditors.
These expressions, "other circumstances," leave a painful latitude to those who have to decide such cases. As to the claim of the wife, however, we have authority a little more positive. The author just referred to enters considerably in detail, respecting the evidence which she must produce in the concurso, and he states in his 7th and 8th conclusion, that when the confession of the husband is "adminiculada" it is full proof of the delivery of her dower. He declares by this expression " adminiculada" to mean among other circumstances, that which arises from the quality and condition of husband and wife—the promise of dowry preceding the confession of it—the proof of payment of some part of what *166 is stated in the act of acknowlegement—the finding among the property of the husband, immoveables which belonged to the wife. Febrero, cinco juicios, lib. 3, cap. 3, § 2 no. 159 and 160.
The instances here put, from which the verity of the husbands acknowlegement is presumed are not exactly presented in this case, but it offers others equally strong. The condition of the parties,—the inventory of the father’s estate, which shews that he left a large property,—the acknowlegement of the executors that they received it,—various sales by authentic acts made by these executors, years before the failure of Lanusse could have been contemplated—the deed to Macarty for the plantation four years preceding the insolvent's application for a respite; all these are strong circumstances to support the truth of Lanusse's confession, made in a public act, that he received notes, and obligations, and real property in town to the amount of one hundred and thirty thousand dollars in payment for the one half of a plantation, the third of which was the property of his wife.
But it has been urged that in this act of sale there is an acknowlegement that Lanusse *167 and his wife received the sum of fifteen thousand dollars, and it is contended, that there is no proof that any part of this was given to him. To this, it may at least be answered, that it is as strong evidence that he received the money as that she did. Taking it most strictly, it establishes that one half was received by each; $7500 by the husband in payment of that part of the plantation which belonged to the community, and the same sum by the wife for that portion which belonged to her;—and so we will consider it.
Lastly, it has been pressed on us that the thirty-four negroes put on the plantation must have augmented in the same proportion with the whole, and in this position we concur. Making this addition to the original cost, there must be deducted the sum of $16,660, which added to the $7500 already stated will leave a balance of $66,962 33/000, for which she was legally entitled to vote. As to the objection that there may be still further deductions to make for other ameliorations of the husband, the same argument would destroy every other claim, as there may be also set-offs against them.
So that on the whole, we will have notes for *168 Labatut, Chiapella and Tricou, to the amount of $203,832 76/000, and this gives them the majority, admitting the Planters’ Bank to have proved their whole demand.
It is therefore ordered, adjudged and decreed, that the judgment of the district be affirmed with costs.

 Mathews, J. was prevented by indisposition, from attending.