Statement of the Case.
BREAUX, C. J.
At the instance of plaintiff bank, properties of defendant were seized, consisting of a lot of ground, together with the cotton oil plant thereon.
Waters & Albert, creditors, brought suit, and obtained a writ of attachment on the 15th day of February, 1909. Their claim amounts to $lo4.10, with 8 per cent, interest from 1908, and attorney’s fee.
The sheriff attached the machinery and all the appliances that the bank had caused to be seized under its writ of seizure.
The day following Terregano, Stathem & Lewis, insurance agents, whose claim amounts to $360, plus interest at 8 per cent, from May 20, 1909, less credit of $210 paid February 8, 1909, and costs, also attached and seized the same property.
Peter H. Hammond had the property seized under a writ of fieri facias to recover the sum of $1,500, less $50, with 5 per cent, interest from February, 1909. He had the property advertised for sale under his fieri facias, and the plaintiff bank also had the property advertised for sale under its writ of seizure and sale.
These creditors entered intp an agreement with the bank and the other creditors, in which it was provided that if the property 'seized by Hammond, together with the other property seized in the foreclosure proceeding, should be sold in execution of the mortgage, then the property seized by Hammond and others should bring the sum of $1,500, which amount should remain in the hands of the sheriff for the purpose of litigation between the mortgage creditor, Hammond, and the other creditors, to determine which should be entitled to the fund.
After this agreement had been made, the creditors, Hammond, the insurance company (represented by Terregano and others), and Waters & Albert, each filed interventions and third oppositions, claiming the respective amounts due them from the proceeds of the sale of the property, as they alleged that the property seized by the bank was not subject to the mortgage of the bank and Mrs. Hardy, its subrogee (on one of the notes she holds).
On these third oppositions the court ordered separate appraisements of the property seized, and directed the sheriff to retain an amount sufficient to meet the claims of third opponents. This was not done. There was no separate appraisement and sale made. Both were waived by the agreement to which we have already referred.
The property seized consisted of machinery, the whole outfit of a cotton oil plant, and appliances, all necessary in operating such a plant. Some of the property is not designated by name in the act of mortgage, held by the plaintiff bank in part and in part by Mrs. Hardy.
*847 The only witness who testified in the case, Peter W. Hammond, stated that the boilers were about the only property that was attached to the soil. He evidently was not inclined to convey the idea that the engine formed a part of the plant, although it sets on walls and is made fast with cement.- His testimony is that other property was not attached to the realty. 'Some of it was placed within the building temporarily, and other property could be easily removed, he said, in substance, without having to disconnect it from the building or any other part of the plant. There is in addition an agreed statement:
“It was a going concern in 1908, and all the machinery seized and attached was in the Lecompte Cotton Oil Company’s building, and that said machinery was placed in the said building by its owners for the purpose of manufacturing oil and other cotton seed products.”
The Bank of Lecompte and Mrs. Hardy are concurrent creditors. Their rights are passed upon in the judgment of the district court.
There is a long list of property which was seized, which the opponents contend was not included in the mortgage, as it was not property which became part of the realty by destination.
As to the opponents, the district court rendered judgment in their favor for the amount of their respective claims.
The bank’s contention is that, as all the property on the ground was a part of the plant, it became a part of the realty by destination, and subject to mortgage.
This is also the contention of Mrs. Hardy, the holder of one of the set of notes held by the bank.
The theory of the other creditors, who had the property seized after the date of the bank’s seizure, is that the machinery, appliances, and other apparatus were movables, and did not become a part of the realty by destination.
Discussion and Judgment.
We will begin by stating by reference to the Code:
Property immovable by destination is that placed by the owner for the improvement of his land. Code, art. 468.
Such as “sugar refineries and other manufactories, and such movables as cannot be removed without breaking the building to which they are attached.”
“The accessories are considered as immovables.” Code, art. 3289.
The contention of the opponents is that the law from which the foregoing was excerpted was repealed, by Act No. 187 of 1904, entitled “An act to amend and re-enact section 1 of Act 30 entitled,” etc. Although Act No. 187 of 1904 is in very great part a reproduction of Act No. 30 of 1904, it does not purport to repeal the original law. But of this later.
That act provides how movables may be immobilized and made to become part of any manufacturing and industrial establishment.
The act sets up that the owner’s declaration must be filed in the office of the register of conveyances or in the office of the recorder of mortgages in the parish where the immovable lies. .According to the provisions of the- act it is only necessary in making this declaration to refer to the machinery and appliances immobilized in general terms. That is the textual provision of the act.
The next section of said act contains details of no moment here.
The repealing clause of the act repeals all laws in conflict with, or contrary to, or inconsistent with, the provisions of this act.
The contention of the appellees is that; under this statute the machinery, appliances, tools, and apparatus of all manufacturing and industrial establishments are movables, unless the declaration ' before mentioned is recorded.
We will here state there are two catego *849 ries of immovables by destination — property attached to the realty, and the other forming part of the realty for its exploitation.
Our plan of mortgages was borrowed from the Code Napoléon, and for that reason the following has application:
We insert the excerpt literally, taken from Hue, vol. 13, p. 216:
“C’est a dire, ayant été attaches au fonds á pernétuelle demeure par le propriétaire; * * * les autres [that is, property not so attached, but forming part of the property] et ce sont les plus nombreux, il suffit que le propriétaire du fonds les y ait placés pour le service de 1’ exploitation de ce fonds.”
This commentator mentions that, in determining whether or not movable has become immovable by destination, the intention of the owner is to be considered.
At first in the history of our jurisprudence the decisions on this subject were concerned with farms and plantations. In time the question of property mortgaged by industrial and commercial enterprises came up for consideration.
The court held that the article quoted above was broad enough to include industrial and commercial establishments. To quote again, “sugar refineries and other manufactories” are referred to in the article.
“Other manufactories,” it is held, included foundries and all other works of the kind constructed on the land of the owner.
We have ruled: The contention of the appellees is that there was no immovable property by destination after the passage of the act relating to industrial and commercial enterprises when not immobilized by the declaration in question.
To sustain their contention, the appellees, urge that the Legislature did not undertake to formulate an act containing a purpose already well expressed in the Code; also that 'the word “whenever” the owner shall file his declaration the machinery and appliances and all renewals and additions shall become immovable by destination shows that if the “whenever” never happens (that is, if the declaration is never filed) the machinery never becomes immovable — growing out of the fact that the old and the new law refers to immovables by destination generally.
Taking up the first ground stated: Although in this respect there is repetition as to the purpose of the article of the Code before cited and the purpose of the statute of 1904, in that both refer to property immovable by destination, it remains that the Legislature may reiterate that which has been previously enacted without its necessarily having the effect of repealing it. It may be a waste of time in thus legislating. It, none the less, is not repugnant to the Constitution. The reproduction of an old statute has not the effect of repealing, nor does it create the impression of intention of repealing the fir§t law.
As illustration:
The amendment of the statute (No. 30 of 1904) is a literal reproduction of the first statute No. 30 of that year. The only amendment the new or amending law contains is that the machinery becomes immovable -for the “purpose of mortgage and sale only.” With that exception, the last or amending act is a complete copy of the first.
It does not follow from that fact that the last statute repeals the first. They are harmonious statutes, and one does not repeal the other.
Taking up the word “whenever,” the next ground urged by the appellees: We do not give it the effect for which the appellees contend. We read the act as follows: That “whenever” a declaration is made, then the property not therein included as part of the realty shall be included and enter into the entity of the industrial and commercial plant. The word “whenever” does not have the effect of excluding or doing away with property previously immovable by destination, except by declaration. It (“whenever” and the *851 word following) has the effect of solidifying as one all of the property of the plant as subject to mortgage; everything connected with the machinery and with the appliances, whether it forms part of the factory or not, was the intention. The lawmaking power made it immovable before the new act, and the same power made it immovable under the terms of the latter act.
As to other property not placed by the owner for permanent use as forming part of the plant or affixed thereto, there was purpose in the declaration,- as to the necessity of making the plant one. The declaration makes it possible for the owner to immobilize property where immobilization is not certain.
The usefulness of the act is evident in mortgaging a foundry, a- printing establishment, consisting of different parts, in regard to which it is at times difficult to make an accurate list. The declaration includes them all, even though the list is general.
We are impressed with the fact that the laws before quoted are not irreconcilable and inconsistent. We will refer to decisions. Regarding Maginnis v. Oil & Soap Works, 47 La. Ann. 1491, 18 South. 459, the court said of machinery; It was placed “upon the. property by its owner for its service, and has been so used,’’ and held that it was immovable by destination.
In another decision the question received further consideration. The judge of the district court (who is now one of the justices of this court) in a carefully written opinion said:
“Boilers,” engines, “lathes, and other machines and apparatus which rest in and upon brick or mortar foundations or settings are the necessary complements” of this establishment; “the whole, together with the lots and buildings, being necessarily part and parcel of the equipment to the establishment of the foundry.”
On appeal, this court in that case held that property attached to immovables fell within the rule of the article quoted supra. Leeds Case, 49 La. Ann. 123, 21 South. 168.
We will not dwell upon this subject further than to state that the statute of 1904 did not change the- status of immovable property by destination to the extent of entirely obliterating clearly defined provisions of a law of a date precedent.
True, it adds a new condition, enabling the owner to mortgage the. whole of a manufacturing plant.
The Act of 1904, No. 187, does not have the far-reaching effect of repealing all laws relating to movables by destination. Under the old law all property attached to or forming part of the immovable is immovable.
But if, on the contrary, the statute in question has the effect of repealing all laws upon that subject-matter, then in this case the boilers inclosed in the immovable are movables.
There is no logical justification possible for such a conclusion.
Evidently it was the legislative intention to enable the debtor to mortgage his factory and accessories as one plant. Unless the statute of 1904 is complied with, the property is not primarily considered as having been mortgaged in its entirety. It does not form one body. In case of necessity the creditor must prove that the property was immovable by destination. If there is a declaration, the onus is not upon him of proving what property is mortgaged.
Were it otherwise, the condition would be anomalous. The judicial and legal mortgage creditors would never become mortgagees of movable property by destination; for debtors, against whose property such mortgages are claimed, would never be inclined to make such a declaration.
As to the vendors of property, who retain mortgage and privilege, he would have the right to recover under the privilege property attached to the property sold.
In the statute before referred to regarding *853 the declaration in question, the Legislature did not attempt to repeal all laws on the same subject-matter, as it might have done had it intended to repeal the first law above quoted. It did nothing of the kind. The repealing part of the statute repeals only inconsistent laws. We have already seen that these laws are not inconsistent.
Statutes must be irreconcilably different, in order to be considered repealed. State ex rel. Pemble v. Buckham, 42 La. Ann. 75, 7 South. 65.
Again, there must be positive enactment or clear repugnance in their respective provisions. Concordia v. Railroad, 44 La. Ann. 614, 10 South. 809.
I-Iere there is neither.
While it is true that the law is not repealed, it remains for the mortgage creditor, in foreclosing, to prove that the property on which it claims its mortgage is included within the terms of the act of mortgage. It must be shown that the machinery and other property form a part of the property mortgaged, attached thereto or affixed therein, so as to form ' a part of the plant.
In the admissions made for the trial the parties agreed that:
“All of the machinery seized and attached was in the Lecompte Ootton Oil Company’s building, and that said machinery was placed in tlie said building by its owners for the purpose of manufacturing oil and other cotton seed products.”
With this admission, in our opinion, all the property made up the plant, and is covered by the mortgage.
To hold otherwise, we would have to hold that even the boilers, attached to and made part of the realty, are not part of the property mortgaged, although as much part of the land as the land itself.
In view of this, there remains only one alternative. It is to reverse the judgment. For reasons stated, the judgment appealed from is annulled, avoided, and reversed, at appellees’ costs in both courts.
See dissenting opinion of PROVO STY, X, 51 South. 1013.