O'NIELL, J., dissents, being of the opinion that the indorsements on the plaintiff's check of $6,000, given for the mortgage note sued on, were not forged by Walker, but are the genuine signatures of the defendant, Pierre L. Vergez, whose attorney, Walker, received the proceeds.

═══

(72 South. 946)

No. 20781.

STATE ex rel. TEXADA v. CAPDEVIELLE, Auditor.

(Oct. 30, 1916.)

*(Syllabus by the Court.)*

STATUTES ☞162—TAXATION ☞310—PARISHES—COMPENSATION OF ASSESSORS—STATUTORY PROVISIONS—IMPLIED REPEAL.

A special law creating a political corporation and fixing the compensation of certain public officials in that particular district or subdivision of the state is not repealed by implication or superseded by a general law fixing the compensation of such officials throughout the state generally and repealing all laws or parts of laws in conflict therewith, because the application of the special or local law on the subject dealt with in the general law to the officials within the district for which the special law was enacted does not conflict with the application and effect of the general law throughout other parts of the state.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 235–237; Dec. Dig. ☞162; Taxation, Cent. Dig. §§ 511–513; Dec. Dig. ☞ 310.]

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Action by the State, on the relation of William F. Texada, for mandamus to Paul Capdevielle, Auditor. From a judgment for defendant, relator appeals. Reversed, and peremptory writ ordered.

Thornton & Thornton and White, Holloman & White, all of Alexandria, for appellant. A. V. Coco, Atty. Gen., and Harry Gamble, Asst. Atty. Gen., for appellee.

O'NIELL, J. This is a mandamus proceeding to compel the state auditor to draw a warrant on the state treasurer for $4,245.66, payable to the relator out of the funds of the Red River, Atchafalaya & Bayou Bœuf levee district. The amount sued for is the unpaid balance of a commission of 3 per cent. on the assessments of property in the parish of Rapides for levee taxes in the years 1910, 1911, 1912, and 1913, during which years the relator was the assessor of that parish.

Up to and including the year 1909, the assessor of the parish of Rapides received each year a warrant from the auditor for an amount equal to 3 per cent. of the levee taxes assessed in that parish, in accordance with section 8 of Act No. 79 of 1890, creating the Red River, Atchafalaya & Bayou Bœuf levee district, and the corresponding section of Act No. 46 of 1892, amending the act of 1890. Before drawing the warrant for 1910, however, the auditor sought the advice of the Attorney General, as to whether section 8 of Act No. 79 of 1890, as amended by Act No. 46 of 1892, fixing the compensation of the assessors of the parishes within the Red River, Atchafalaya & Bayou Bœuf levee district, was repealed or superseded by Act No. 252 of 1910, fixing the compensation of the assessors throughout the state generally, the parish of Orleans excepted. Being advised that Act No. 252 of 1910 had fixed the compensation of the assessor in every parish in the state, excepting the parish of Orleans, at $250 per annum, for his services in assessing

levee taxes, the auditor drew a warrant in favor of the relator for that sum, as his compensation for the assessment of levee taxes for that year. Warrants for the same amount were drawn for the years 1911, 1912, and 1913, which were accepted by the relator, under protest and without waiving his claim to the balance of the commission of 3 per cent. under section 8 of Act No. 46 of 1892, amending and re-enacting Act No. 79 of 1890, creating the levee district and fixing the compensation of the assessors of the parishes therein.

On the trial of the case in the district court, it was admitted by and between counsel for the relator and the respondent that the Red River, Atchafalaya & Bayou Bœuf levee district is the only levee district that extends into the parish of Rapides. It was admitted that 3 per cent. of the levee taxes assessed in that parish during the years 1910, 1911, 1912, and 1913 (less the $1,000 paid to the assessor), amounted to $4,245.66; and that the state treasurer had funds of the Red River, Atchafalaya & Bayou Bœuf levee district on hand, out of which a warrant for the amount sued for could be paid in the event judgment should be rendered in favor of the relator. After trial of the rule to show cause why the mandamus should not issue, the district court rendered judgment in favor of the respondent, auditor, rejecting the relator's demand, and the latter has appealed.

### Opinion.

Section 8 of Act No. 79 of 1890, creating the levee district, and the corresponding section of Act No. 46 of 1892, amending the original act, provides:

"That all the assessors of the parishes belonging to this district, shall * * * receive as an annual compensation for all his services required under this act, three (3) per cent. of the levee taxes assessed in his parish, the same to be paid by the state treasurer upon a warrant from the auditor, and only out of the fund collected in the district for levee and drainage purposes."

When the Red River, Atchafalaya & Bayou Bœuf levee district was created, the compensation of assessors throughout the state was fixed in section 2 of Act No. 85 of 1888 (the general revenue law of that year) at 4 per cent. on the first $40,000 of the assessment of state, parish, and poll taxes, and 1 per cent. on the excess over $40,000, the minimum compensation being fixed at $400 per annum. That section of the revenue law was amended by Act No. 106 of 1890, by adding:

"And for all his services, duties or labors in assessing or extending on the rolls any and all levee or land taxes the sum of $100.00."

The next enactment of the Legislature relating to the compensation of assessors is found in section 2 of Act No. 170 of 1898, the general revenue law of that year, viz.:

"He shall receive as an annual compensation for all his labors, services and duties 4% on the first $50,000.00, aggregate amount of all state, parish and poll taxes assessed and 2% on any excess over $40,000.00, and for all his services, duties or labors in assessing or extending on the rolls any and all levee or land taxes the sum of $100.00: Provided no assessor shall receive less than four hundred dollars in any parish for each annual assessment of state, parish, poll and * * * levee taxes. That the payment of this compensation shall be distributed between the state, parish and school boards and other taxing district or division in proportion to the amount received by each: Provided that if said office be already filled by appointment, this act shall not be construed as creating any vacancies therein, and the officers now appointed shall serve during the period for which they were appointed."
(N. B. The figures $40,000 evidently should be $50,000.)

The repealing clause of Act No. 170 of 1898, being section 93, is as follows:

"That all laws or parts of laws inconsistent or in conflict with the Constitution of the state, or inconsistent with or contrary [to] or superseded by or in conflict with the provisions of this act, be and the same are hereby repealed, and that the provisions of this act shall take effect from and after its passage and promulgation."

Section 2 of Act No. 170 of 1898 was amended and re-enacted by Act No. 135 of 1902, with reference to the compensation of

the assessors throughout the state (the parish of Orleans excepted), as follows, viz.:

"He shall receive as an annual compensation for all his labors, services and duties 4% of the first fifty thousand dollars ($50,000.00), aggregate amount of all state, parish and poll taxes assessed, and 2% on any excess over $50,000.00, and for all his services, duties or labors in assessing or extending on the rolls any and all levee taxes, the sum of one hundred dollars ($100.00), except where the parish for which the assessor is appointed lies in more than one levee district, in which case he shall receive the sum of 2% on the aggregate amount of such taxes: Provided no assessor shall receive less than $400.00 in any parish for each annual assessment of state, parish, poll, and all levee taxes. That the payment of this compensation shall be distributed   *   *   *"

—as in the original section 2 of Act No. 170 of 1898.

There is no repealing clause in Act No. 135 of 1902; the concluding section of which provides merely that this act shall take effect from and after its passage.

In the extra session of 1907, the Legislature enacted an independent statute, Act No. 22 of that session (not referring expressly to any of the provisions of the general revenue laws), entitled "An act fixing the compensation of the tax assessors of each parish in the state, the parish of Orleans excepted." After fixing the compensation at 4 per cent. on the first $50,000 of the amount of the assessment of state, parish, drainage board, school, special, and poll taxes, 2 per cent. on the next $50,000, and 1 per cent. on the excess over $100,000, the statute of 1907 contains this proviso:

"Provided that nothing herein shall be so construed as to allow assessors more than 1% on special school taxes, and for all his services, duties and labor in assessing and extending on the tax rolls any and all levee taxes, the sum of one hundred dollars annually. That the payment of compensation herein provided, except for levee taxes, which shall be paid by the levee boards for which they are assessed, shall be distributed among the state, parish and parish school board, and other taxing districts or divisions, in proportion to the amount received by each."

The repealing clause, being section 2, of the act provides:

"That all laws and parts of laws in conflict herewith be and the same are hereby repealed and that this act shall take effect January 1st, 1909."

The proviso of Act No. 22 of the extra session of 1907, quoted above, was amended by Act No. 213 of 1908, so as to read as follows:

"That nothing herein shall be so construed as to allow assessors more than 2% on special school taxes, and for his services, duties or labors in assessing or extending on the rolls any and all levee taxes, the sum of one hundred dollars ($100.00), except where the parish for which the assessor is elected lies in more than one levee district, in which case he shall receive   *   *   *   2% on the aggregate amount of such taxes."

The act provides that the assessor shall receive not less than $400 for each annual assessment of state, parish, poll, and all levee taxes, and that the amount of the compensation shall be borne by the state, parish, school boards, cities, towns, and other taxing districts or divisions in proportion to the amount received by each. The repealing clause of the act is:

"That all laws and parts of laws in conflict herewith be and the same are hereby repealed and that this act shall take effect January 1st, 1909."

The proviso quoted from Act No. 213 of 1908 was amended by Act No. 252 of 1910, so as to read as follows:

"Provided that nothing herein shall be so construed as to allow assessors more than 2% on special school taxes; and, for his services, duties and labors in assessing or extending on the regular rolls any and all levee taxes, the sum of two hundred and fifty dollars ($250.00) except where the parish for which the assessor is elected lies in more than one levee district, in which case he shall receive the sum of 2% on the aggregate amount of such taxes."

The act provides that each assessor shall receive not less than $400 for each annual assessment of state, parish, poll, and levee taxes, and that the amount paid shall be apportioned among the state, parish, school board, cities, towns, and other taxing districts or divisions in proportion to the amount received by each. The repealing clause of the act is:

"That all laws and parts of laws in conflict herewith are hereby repealed, and this act shall take effect from and after the promulgation of this act."

As is said in the brief filed by the Attorney General, the only question presented for decision in this case is whether the general repealing clause of Act No. 252 of 1910 (and of Act No. 213 of 1908, and of Act No. 22 of the extra session of 1907) repealed or superseded section 8 of Act No. 79 of 1890, as amended and re-enacted by Act No. 46 of 1892, fixing the compensation of the assessors of the parishes included in the Red River, Atchafalaya & Bayou Bœuf levee district. The Attorney General concedes that the repealing clause of the general law of 1910, fixing the compensation of assessors generally, does not repeal or supersede section 8 of the special Act No. 79 of 1890 (as amended and re-enacted by the special Act No. 46 of 1892), creating the Red River, Atchafalaya & Bayou Bœuf levee district and fixing the compensation of the assessors of the parishes therein, unless "the two acts are so irreconcilably inconsistent or repugnant that both cannot stand together." He quotes, from 36 Cyc. 1089, the rule of interpretation thus:

"The question is always one of intention, and the purpose to abrogate the particular enactment by a later general one is sufficiently manifested when the two acts are so irreconcilably inconsistent or repugnant that both cannot stand together. Such intention may also be made to appear by the words of the general act, by the subject-matter with which the general act is concerned, by other legislation on the same matter, by the surrounding circumstances, by the purpose to be accomplished, or by anything else to which reference may properly be had for the purpose of discovering the legislative intent."

Applying the first rule suggested, we find that the two statutes in question are not so irreconcilably inconsistent or repugnant that both cannot stand together. The application of section 8 of the special Act No. 46 of 1892, amending and re-enacting the special Act No. 79 of 1890, creating the Red River, Atchafalaya & Bayou Bœuf levee district and fixing the compensation of the assessors of the parishes within that district, to those assessors, would not in any way interfere, or be inconsistent, with the application of the general law, Act No. 252 of 1910, fixing the compensation of assessors generally, to the assessors in many parishes in a number of drainage districts, the statutes creating which do not fix the compensation of the assessors therein. There are nine levee districts (besides the Orleans levee district) in this state, embracing thirty parishes and parts of parishes, the assessors of which were not given special compensation for assessing levee taxes, by the acts creating the districts.

As evidence of the intention of the Legislature not to repeal, by the act fixing the compensation of assessors generally, the special provisions of the acts creating certain levee districts, and allowing extra compensation to the assessors of the parishes within such districts, it is very significant that it was only in the districts in which special assessment rolls were required and in which the duties and work of the assessors was made more arduous that extra compensation was allowed the assessors by the statutes creating those districts.

Section 7 of Act No. 33 of the extra session of 1879, divided the state into six levee districts; and the last sentence of section 8 of the statute provided for the compensation of assessors for assessing levee taxes, as follows, viz.:

"The compensation of tax collectors and assessors shall be the same under this act as for all other state taxes: Provided that, in parishes which are not wholly comprised in one levee district the assessor shall make separate rolls for each part of the parish included in any district."

Section 11 of Act No. 26 of 1884, creating the Tensas Basin levee district, made provision for extra compensation of 2 per cent. for the assessors in the seven parishes composing the district, for assessing the levee tax. We observe, however, that the property

declared subject to taxation for levee purposes in that district was only such portion of the seven parishes enumerated in the statute as were then subject to overflow or that had been overflowed by the waters of the Mississippi river or Ouchita river subsequent to the year 1865; and we observe that the statute required the assessors in the seven parishes composing the district to separately list, from their own knowledge or from the most reliable information they could obtain, all of the taxable property in their respective parishes that was then subject to overflow or that had been overflowed since 1865. And, from those lists, the assessors were required to make separate tax rolls, on blanks to be furnished by the state auditor, fully describing the property assessed.

Act No. 44 of 1886, repealing so much of Act No. 33 of 1879 as was necessary to abolish the Fifth levee district, and creating a new district known as the Fifth Louisiana levee district, did not allow extra compensation to the assessors of the four parishes composing the new district, but provided merely that it should be the duty of the assessors to extend the levee tax on the tax rolls. The manifest reason why no additional compensation was allowed to the assessors in that district was that all of the land within the four parishes composing the district was subject to the levee tax; hence the assessors in those parishes were not given any additional work, by the creation of the levee district, except to extend the levee tax on the regular tax roll.

Act No. 93 of 1890, creating the Orleans levee district, did not allow extra compensation to the assessors of the parish of Orleans for assessing the levee tax, but merely made it their duty to extend the levee tax on the regular rolls. The evident reason for not allowing extra compensation in that case was that all of the land within the parish of Orleans was subject to the levee tax; hence the assessors were not required to make a special roll or list of the property subject to the levee tax.

Act No. 95 of 1890, creating the Pontchartrain levee district, did not allow extra compensation to the assessors for assessing the levee tax, but merely made it their duty to extend the tax on the regular roll. The evident reason why no additional compensation was allowed in that district was that the tax was levied upon all of the territory defined by the statute.

Act No. 97 of 1890, creating the Atchafalaya Basin levee district, made it the duty of the assessors of the parishes entirely within the district to extend the levee tax on the regular assessment rolls, and made it the duty of the assessors of the parishes situated partly within the district to make separate assessment rolls for that part of the parish included in the district, "without additional compensation." The evident reason why no additional compensation was allowed the assessors in that district was that the tax was levied upon all of the property situated within the defined limits of the district.

Act No. 13 of 1892, creating the Lafourche Basin levee district, and imposing the levee tax upon all of the property within the defined limits of the district, contains precisely the same provisions with reference to the assessors as were made in the act creating the Atchafalaya Basin levee district.

Act No. 14 of 1892, creating the Lake Borgne levee district, and imposing the levee tax upon all of the property within the limits defined by the statute, contains the same provisions with regard to the duty of the assessors that were made in the acts creating the Atchafalaya Basin levee district and the Lafourche Basin levee district.

Act No. 74 of 1892, creating the Caddo levee district and imposing the levee tax on all of the property within the limits defined by the act, also required the assessors of the

parishes entirely in the district to extend the tax on the regular rolls, and required the assessors of the parishes partly within the district to make separate assessment rolls for the portion of the parish included in the district, "without additional compensation."

The same provisions as to the duties of the assessors are contained in Act No. 89 of 1892, creating the Bossier levee district, where the property on which the tax was levied was defined in the statute. The same provisions, as to the duties of the assessors, were made in Act No. 18 of 1894, creating the Buras levee district and defining the territory on which the levee tax was imposed. And the same provisions, regarding the duties of the assessors, were made in Act No. 24 of 1898, creating the Grand Prairie levee district and defining the territory in which the tax was imposed.

Section 8 of Act No. 7 of 1902, creating the Plaquemines Parish East Bank levee district, allowed the assessor, for making special rolls for that part of the parish of Plaquemines included in the district, such rate of compensation as should be fixed by the board of commissioners of the levee district. The manifest reason for providing that the assessor should receive such additional compensation as the board of commissioners should allow for making the special rolls of that part of the parish of Plaquemines included in that levee district was that there were three other levee districts extending into the parish of Plaquemines, and the creation of a fourth district in the parish made the work of the assessor extraordinary.

Section 19 of Act No. 109 of 1904, creating the Red River & Bayou Des Glaizes levee district, in the parish of Avoyelles, allowed the assessors of that parish a commission of 3 per cent. for making the assessments and separate rolls for the part of the parish included in the district. It appears, however, that the levee tax was not imposed upon all of the property in the parish, but only upon "that portion of the alluvial lands" in the parish of Avoyelles embraced within certain boundaries described in the statute.

Section 19 of Act No. 80 of 1906, creating the Saline levee and drainage district, in the parish of Avoyelles, also allowed the assessor of that parish a commission of 3 per cent. for making the assessments and tax rolls. But in that statute it also appears that the district was composed of that portion of the alluvial lands in the parish of Avoyelles embraced within the boundaries described in the statute. And it appears that there were already two other levee districts in the parish of Avoyelles; hence the creation of a third district, requiring the making of special assessment rolls, made the work of the assessor extraordinary.

The territory embraced within the Red River, Atchafalaya & Bayou Bœuf levee district is defined in section 1 of Act No. 79 of 1890, and in the corresponding section of the amending and re-enacting Act No. 46 of 1892, as all the territory subject to overflow in the parishes of Avoyelles and Rapides, as well as that included in certain defined limits in the parish of St. Landry. The assessors of the parishes wholly or partly within the district are required by the statute to separately list all property subject to the levee tax, and, from their lists, they are required to prepare separate assessment rolls on blanks furnished by the state auditor, fully describing the property assessed. It is provided in section 7 of the act, creating the district, and in the corresponding section of the amending act, that, in case of a disagreement between the assessor and the taxpayer, as to whether the latter's land is subject to be listed for levee taxes, two responsible neighbors, one selected by the assessor, and the other selected by the taxpayer, shall decide whether the property is subject to the levee tax. In the original act it was provided

that, if the two neighbors so selected should fail to agree, they might select a third taxpayer, whose decision should be final, but subject to an appeal to the courts either by the assessor or by the taxpayer. That provision of the original act was changed in the amending act of 1892, by providing that, if the two neighbors selected should fail to agree, the assessor shall report the facts to the president of the board of levee commissioners, who may call upon the board of state engineers to make such surveys and take such levels as may be necessary to determine whether the land in question would be subject to overflow if the levee system provided in the act did not exist or if a break or combination of breaks should occur in the system, etc. The amending act also provides that the property of a tenant on a plantation shall not be subject to the levee tax unless the portion of the plantation leased by him is subject to overflow, and that the proprietor shall pay a personal tax for levee purposes bearing the same ratio to the entire personal property assessed as the cultivated land subject to overflow bears to the entire cultivated land assessed.

Hence it appears that the duties of the assessors with regard to the property subject to the levee tax in the Red River, Atchafalaya & Bayou Bœuf levee district involve, not only extraordinary work, but considerable discretion and responsibility. And that is the manifest reason why the assessors in the parishes into which the district extends are allowed extra compensation for making the assessments and special tax rolls.

The learned Attorney General concedes that the reason why the Legislature allowed extra compensation to the assessors of the parishes in the Red River, Atchafalaya & Bayou Bœuf levee district is that the statute creating that district imposed extraordinary duties and responsibilities upon the assessors of those parishes. He contends, however,

that, during the 17 years between the date of the creation of that levee district and the adoption of Act No. 22 of the extra session of 1907, the assessors had ample time to determine what lands were subject to the levee tax and to place them on the special rolls; hence he argues that there was then no reason for allowing extra compensation to the assessors of the parishes within that levee district. That might have been a good reason for the Legislature to have repealed expressly, by the repealing clause of the general Act No. 22 of 1907, or of the amending Act No. 213 of 1908, or of the amending Act No. 252 of 1910, the provisions of section 8 of Act No. 46 of 1892, allowing extra compensation to the assessors of the parishes in the Red River, Atchafalaya & Bayou Bœuf drainage district. But the fact that there was a good reason for the Legislature to have expressly repealed the provisions of the special law, when the general law on the subject of the compensation of assessors was enacted, only emphasizes the fact that the Legislature did not express the intention to repeal the special law, and it strengthens the inference that the Legislature did not intend that the general law should repeal or supersede the special law on the subject.

Another fact signifying that it was not the intention of the Legislature that the general provisions of Act No. 252 of 1910 should repeal or supersede the special provisions of Act of 1892, fixing the compensation of the assessors of the parishes within the Red River, Atchafalaya & Bayou Bœuf levee district, is that the general act does not, in positive terms, fix the compensation of assessors for assessing levee taxes and extending them on the assessment rolls, but merely declares, in negative terms, that nothing contained therein shall be so construed as to allow the assessors more than $250 for such services, duties, and labors.

And a more significant fact to be consid-

ered in this connection is that Act No. 22 of the extra session of 1907, and the amending Act No. 213 of 1908, both provided that nothing therein should be construed so as to allow assessors more than $100 for assessing levee taxes and extending them on the tax rolls. And, in the amending Act No. 252 of 1910, the term "regular rolls" is used in the provision that nothing therein shall be construed so as to allow the assessor more than $250 for assessing levee taxes and extending them on the *regular* rolls. From which it may well be inferred that, in adopting the amending and re-enacting statute of 1910, fixing the compensation of assessors throughout the state generally, the Legislature took care not to repeal by implication any special statute allowing assessors extra compensation for extending levee taxes on a *special* assessment roll.

It is impossible to conclude that the negative provision of Act No. 252 of 1910, that nothing therein shall be so construed as to allow assessors more than $250 for assessing levee taxes and extending them on the *regular* rolls, repealed or superseded section 8 of Act No. 46 of 1892, allowing extra compensation to the assessors of the parishes within the particular levee district created by that act, for listing the property subject to the levee tax and extending the assessment on a *special* roll, if it be conceded that section 8 of Act No. 46 of 1892 was not repealed by Act No. 22 of the extra session of 1907, or by the first amending Act No. 213 of 1908; both of which general acts provided that nothing therein should be so construed as to allow assessors more than $100 for assessing levee taxes and extending the assessment on the *tax rolls*. Yet it was not contended by the state auditor that section 8 of Act No. 46 of 1902 was repealed or superseded by the general Act No. 22 of the extra session of 1907, or by the amending Act No. 213 of 1908, or until the adoption of the amending Act No. 252 of 1910. In determining the meaning or intention of the Legislature, where the language of the statute itself is doubtful, the interpretation put upon it by the officials charged with its enforcement is entitled to much consideration. See State v. Young, 137 La. 120, 68 South. 241, and authorities there cited. In the case of State ex rel. Board of Commissioners of the Saline Levee & Drainage District v. Paul Capdevielle, Auditor, et al., 122 La. 615, 48 South. 126, wherein the board of commissioners of the Red River, Atchafalaya & Bayou Bœuf levee district was an intervener, this court had occasion to construe certain provisions of the statutes in question, Act No. 79 of 1890 and Act No. 46 of 1892, and held that the interpretation given to the law by the auditor, the register of the land office, the boards of commissioners and other state officials and agencies, was entitled to much consideration; and their interpretation was adopted by the court. In State v. Comptoir National D'Escompte de Paris, Albert Breton, Agent, 51 La. Ann. 1272, 26 South. 91, and in State v. Southern Pacific Co., and State v. United Fruit Co., 137 La. 435, 68 South. 819, L. R. A. 1915F, 1140, it was again said that the interpretation of a doubtful statute by the public officers charged with its enforcement was entitled to great weight by the courts.

It is important to note that the repealing clauses in the general laws fixing the compensation of assessors throughout the state, enacted since the passage of the act creating the Red River, Atchafalaya & Bayou Bœuf levee district and fixing the compensation of the assessors of the parishes in that district, and since the adoption of the amending statute of 1892 with regard to that particular district, do not provide for the repeal of all laws on the subject of the compensation of the assessors, but merely repeal such laws or provisions of laws as are inconsistent or

in conflict with the general law on the subject. For example, the general revenue act, No. 170 of 1898, repealed "all laws or parts of laws * * * inconsistent with or contrary to or superseded by or in conflict with" the provisions of that act. Act No. 135 of 1902, amending and re-enacting section 2 of the general revenue law of 1898, fixing the compensation of assessors generally throughout the state, did not contain any repealing clause. Act No. 22 of the extra session of 1907, Act No. 213 of 1908, and Act No. 252 of 1910, relating only to the compensation of assessors generally throughout the state (the parish of Orleans excepted) repealed, not all laws or parts of laws *on that subject*, but only "all laws and parts of laws in conflict" therewith. This court has consistently held that such general repealing clauses as are quoted above do not repeal special laws on the subject dealt with in the general law, unless the provisions of the two statutes are irreconcilable. In fact, the doctrine has been stated to be that such a repealing clause as is contained in the general law in question does not repeal a special law on the subject dealt with in the general law unless the repeal by implication is necessary to give the later statute on the subject any meaning or effect. See D'Armas' Case, 10 Mart. (O. S.) 158; Lacroix v. Coquet, 5 Mart. (N. S.) 527; Saul v. His Creditors, 5 Mart. (N. S.) 569, 16 Am. Dec. 212; Bank of Louisiana v. Farrar, 1 La. Ann. 49; Douglass v. Craig, 2 La. Ann. 919; Albert v. Brewer, 9 La. Ann. 64; Waldo et al. v. Bell, 13 La. Ann. 329; Beridon v. Barbin, 13 La. Ann. 458; Succession of Fletcher, 13 La. Ann. 498; St. Martin v. City of N. O., 14 La. Ann. 113; Nixon v. Piffet et al., 16 La. Ann. 379; Bond v. Hiestand, 20 La. Ann. 139; City of N. O. v. Poydras Orphan Asylum, 33 La. Ann. 850; N. O. & C. R. R. Co. v. City of N. O., 34 La. Ann. 429; State ex rel. Cittarotto v. Judge of Civil District Court, 37 La. Ann. 573; State v. Natal et al.,

39 La. Ann. 439, 1 South. 923; State v. Labatut, 39 La. Ann. 513, 2 South. 550; State ex rel. City of N. O. v. Judge, 40 La. Ann. 844, 5 South. 525; State ex rel. Pemble v. Buckner, 42 La. Ann. 74, 7 South. 65; Weller v. Von Hoven, 42 La. Ann. 600, 7 South. 702; Osthoff v. Flotte, 48 La. Ann. 1094, 20 South. 282; Welch v. Gossens, 51 La. Ann. 852, 25 South. 472; Hayes v. Morgan's Louisiana & Texas R. R. & S. S. Co., 117 La. 593, 42 South. 150; Bank of Le Compte v. Le Compte Cotton Oil Co., 125 La. 844, 51 South. 1010; Olivier v. Adeline Sugar Factory Co., 131 La. 712, 60 South. 201; Hunter, Tax Collector, v. Wells Fargo Express Co., 134 La. 358, 64 South. 139; Kerlin v. Bryceland Co., 134 La. 463, 64 South. 289; Paepcke Leicht Lumber Co. v. Vantrompt, Tax Collector, 137 La. 743, 69 South. 159; Orleans Kenner Electric Railway Co. v. Christina et al., 139 La. 470, 71 South. 770.

In Hayes v. Morgan's Louisiana & Texas R. R. & S. S. Co., 117 La. 593, 42 South. 150, it was held that the section of the charter of the defendant company (Act No. 37 of 1877), providing that the corporation should be sued only at its domicile, was not repealed by Act No. 93 of 1888, declaring that all public carriers might be sued for damages for a failure to deliver freight, either at the point of delivery or at the domicile of the public carrier, at the option of the plaintiff. The general statute repealed "all laws or parts of laws in conflict" therewith.

In the case of Paepcke Leicht Lumber Co. v. Vantrompt, 137 La. 743, 69 South. 159, it was held that the provisions of the general revenue act, No. 170 of 1898, relating to the assessment of property and the collection of state and parish taxes thereon, fixing the compensation of the attorney for the tax collector in injunction proceedings, and declaring that an injunction should not issue to restrain the collection of any tax except after a rule against the tax collector was

made absolute, and then only on the plaintiff's furnishing a bond for an amount exceeding by one-half the sum of the taxes contested, with interest, penalties, and costs, did not repeal the provisions of the charter of the town of Bayou Sara, Act No. 109 of 1850, relating to the collection of the taxes levied by the municipal authorities. It was observed that the charter of Bayou Sara did not restrict the authority of the judge to issue an injunction against an illegal tax sale, or limit his discretion in fixing the amount of the injunction bond, or impose any other penalty upon the delinquent taxpayer than the payment of interest.

In Welch v. Gossens, 51 La. Ann. 852, 25 South. 472, it was held that the provision of the charter of the city of Alexandria, Act No. 111 of 1868, requiring a majority of the votes cast to elect a mayor, was not repealed by section 7 of the general election law, Act No. 152 of 1898, declaring:

"That in all elections by the people, the person or persons having *the highest number of votes,* shall be deemed and declared to be elected."

The repealing clause of the general election law referred to is:

"That all laws or parts of laws contrary to or in conflict with the provisions of this act are hereby repealed."

The legislative authority to amend or repeal the provisions of the legislative charters of municipal corporations, or to amend or repeal the provisions of special acts creating political corporations of any class, by a general law relating to all such corporations, is not to be doubted. That authority was recognized in the case of the Mayor and Council of Alexandria v. White, 46 La. Ann. 449, 15 South. 15. But the amendment or repeal of the special law by the subsequent general law must be expressed in the latter act or be a necessary implication to give the later legislation any meaning or effect, otherwise it will not be presumed that the Legislature intended the general law to amend or repeal or supersede the special statute. It was so held in Welch v. Gossens, citing Mayor and Council of Alexandria v. White, supra.

A special statute creating a particular levee district and fixing the compensation of the officials within such district is the charter of that political corporation, as much so as the statute creating a municipal corporation is its charter. The provisions of a special law creating a political corporation and fixing the compensation of the public officials within that corporation are not repealed by a general law fixing the compensation of such officials throughout the state generally, unless the intention to repeal such provisions of the special law are expressed in the later general law on the subject, or unless the repealing clause declares that all laws on the same subject are repealed, or unless the repeal by implication is necessary to give the general law any meaning, application, or effect. We cannot conclude, by any rule of construction or interpretation, that the provisions of section 8 of Act No. 79 of 1890, as amended and re-enacted by Act No. 46 of 1892, fixing the compensation of the assessors of the parishes within the Red River, Atchafalaya & Bayou Bœuf levee district, were repealed or superseded by Act No. 252 of 1910, fixing the compensation of assessors throughout the state generally.

Considering that the respondent, auditor, acted on the advice of the Attorney General and was in good faith in requiring a judicial interpretation of the law in question, we have concluded to exercise the authority conferred upon this court by Act No. 229 of 1910, allowing appellate courts discretion to tax the court costs as may be deemed equitable, and will require the relator to pay the costs of these proceedings.

The judgment appealed from is reversed, and it is now ordered, adjudged, and decreed

that a peremptory writ of mandamus issue herein, directing the auditor of public accounts to issue a warrant on the state treasurer, in favor of the relator, William F. Texada, for the sum of $4,245.66, payable out of the funds of the Red River, Atchafalaya & Bayou Bœuf levee district in the hands of the state treasurer. The relator, appellant, is to pay the costs incurred in the district court and on appeal.

SOMMERVILLE, J., takes no part.