2 So.2d 11

**MOULEDOUX et al. v. MAESTRI, Mayor, et al.**

**No. 36147.**

April 10, 1941.

Rehearing Denied April 28, 1941.

Francis P. Burns, City Atty., and William F. Conkerton and Henry C. Keith, Jr., Asst. City Attys., all of New Orleans (Edward Rightor and E. Howard M'Caleb, both of New Orleans, of counsel), for relators.

deLesseps S. Morrison and Jacob H. Morrison, both of New Orleans, for respondents.

Eugene Stanley, Atty. Gen., amicus curiae.

H. W. Robinson, of New Orleans, amicus curiae.

HIGGINS, Justice.

Three citizens and taxpayers of the City of New Orleans, State of Louisiana,

and a citizen and taxpayer of the Parish of Jefferson, Louisiana, instituted this action against the Mayor and the members of the Commission Council of the City of New Orleans to enjoin the collection of the sales or use tax levied by Ordinance No. 15,201, Commission Council Series, adopted December 12, 1940, under paragraph (f) of Section 1 of Act No. 338 of 1936, which amended the charter of the City of New Orleans (Act No. 159 of 1912), alleging that the Commission Council was without power and authority to adopt the ordinance, that the ordinance was unconstitutional, and that Act No. 338 of 1936 had been repealed by Act No. 82 of 1940.

The defendants pleaded (1) that the plaintiffs had an adequate legal remedy and, therefore, were not entitled to equitable relief through injunction process; (2) that they had failed to allege wherein the ordinance affected or injured them as individuals; (3) that the City had the power and authority to levy and collect such a tax; (4) that the sales or use tax, the collection of which was sought to be enjoined, was constitutional because it was an excise tax imposed upon the purchaser, user, or consumer and not a license tax and, therefore, not prohibited by any provision of the Constitution of Louisiana of 1921; and (5) that Act No. 338 of 1936 (amending the charter of the City of New Orleans, Act No. 159 of 1912) had not been, either expressly or impliedly, repealed by Act No. 82 of 1940.

· The trial judge held that the plaintiffs were entitled to the equitable remedy of injunction, because they did not have an adequate legal remedy; that they had sufficient interest in the matter to institute the suit and stand in judgment; and, on the merits, concluded that the ordinance was unconstitutional for the reason that the Legislature is prohibited from surrendering the taxing power of the Sovereign State; that the tax levied was a license tax and, therefore, illegal, because the State had not levied such a tax; and, finally, that the authority of the City to levy and collect the sale or use tax was withdrawn by the Legislature through the repealing clause of Act No. 82 of 1940. The district judge then issued an injunction restraining the City officials from enforcing the ordinance and collecting the tax.

The defendants' application for a suspensive appeal from the judgment was denied by the trial judge and they petitioned this court for writs of certiorari, prohibition and mandamus. We issued an order, under our supervisory powers, directing the district judge and the plaintiffs to show cause why the relief prayed for by the defendants, as relators, should not be granted, and suspended the effect of the judgment of the district court until further orders of this court. In response to the rule issued by us, the learned trial judge and the plaintiffs, as respondents, made proper return by filing in this court the record in the case and briefs in support of their position.

On December 12, 1940, the Mayor and the Commission Council of the City of New Orleans adopted Ordinance No. 15,201, Commission Council Series, pursuant

to paragraph (f) of Section 1 of Act No. 338 of 1936, amending the City Charter (Act No. 159 of 1912), levying a sales or use tax of 2 per cent, modified by a "bracket system", on the sale at retail, the use, the consumption, the distribution, the lease and the storage of articles of tangible personal property, as defined in the ordinance, to be used or consumed in the City, after January 1, 1941.

On December 26, 1940, the Rules and Regulations establishing the "bracket system" were published showing there would be due no tax on transactions from one cent to twelve cents, one cent on transactions from thirteen cents to sixty-two cents and two cents on transactions from sixty-three cents to ninety-nine cents.

On December 31, 1940, the Commission Council adopted an amendatory ordinance, No. 15,224, Commission Council Series, correcting certain errors and omissions in the original ordinance. In accordance with sub-paragraph (f), Section 2, Ordinance No. 15,201, the Commissioner of Public Finance prepared the schedule of the amounts to be collected from purchasers, users, consumers, and lessees in respect to any transactions upon which the sales or use tax was imposed by the provisions of the ordinance, and the schedule was duly unanimously approved by the members of the Commission Council on January 7, 1941.

The ordinance places personal liability for the payment of the tax upon the purchasers, users, consumers, and lessees of tangible property and makes the dealer the

agent of the City for the collection and remittance of the tax to it. The dealer is made responsible to the City, both civilly and criminally, in the event of his failure to collect and remit the tax. He is not allowed to assume the tax himself and is also prohibited from absorbing it.

In this court, the Mayor and the members of the Commission Council state that they are not urging the exceptions filed in the district court and they confine their brief to the merits of the controversy.

The members of the Fire Department of the City of New Orleans, appearing through an amicus curiae, join the City authorities in upholding the legality and constitutionality of the sales or use tax ordinance, declaring that they have an interest in the matter because they have obtained a judgment in this court against the City for an increase in salary voted to them under a constitutional amendment, and that the City has been condemned to pay the back increase salary as well as the future salary on the increase basis and there is presently due them approximately $200,000 which the City proposed to pay to them, according to the 1941 budget, from a part of the funds realized through the sales or use tax. In this brief it is also stated: "The Sales Tax involved in the instant case was intended to provide for the emergency during 1941, of the need of funds with which to carry on unemployment relief involving in excess of 20,-000 residents of the City and their families; the requirements of the Sewerage & Water Board for extension of water mains for the rapidly growing City; the back pay

of the Firemen and Police; and other urgent public needs." It is conceded that the revenues from the tax are dedicated to public purposes.

There is not any question raised as to the legality of the ordinance on account of irregularity in the procedure of adopting it.

■ We have no right to review the policy or wisdom of legislation because our jurisdiction is confined to determining the applicability, legality or constitutionality of laws. Lionel's Cigar Store v. McFarland, 162 La. 956, 967, 111 So. 341.

The respondents first contend that the general taxing power conferred upon the City of New Orleans was so extraordinary as to be equivalent to the surrender and abandonment of the taxing power by the Legislature to the City and that such legislation is in the teeth of Article X, Section 1 of the Constitution of 1921, as amended, which expressly prohibits the Legislature from surrendering the taxing power vested in it by the Sovereign State. On the other hand, they maintain that if the court were to hold that the Legislature constitutionally delegated taxing power to the City of New Orleans, such power was inadequate to confer upon the City the right and the authority to levy and collect the alleged sales or use tax.

The Constitutions of Louisiana of 1898 and 1913 contain Article 224, which reads as follows: "Art. 224. The taxing power may be exercised by the General Assembly for State purposes, and by parishes and municipal corporations and public boards, under authority granted to them by the General Assembly, for parish, municipal, and local purposes, strictly public in their nature."

Section 5 of Article X of the Constitution of 1921 contains the following provision: "Parochial and *municipal corporations* and public boards *may exercise the power of taxation, subject to such limitations as may be elsewhere provided in this Constitution, under authority granted to them by the Legislature for parish, municipal and local purposes, strictly public in their nature*. The provisions of this section shall not apply to, nor affect, similar grants to such political subdivisions under other sections of this Constitution which are self-operative." (Italics ours.)

Paragraph (e), Section 1 of Act No. 159 of 1912, a legislative act and the charter of the City of New Orleans, provided: "The city shall also have all powers, privileges and functions which, by or pursuant to the Constitution of this State, have been, or could be, granted to or exercised by any city."

The Legislature, in subparagraph (f) of Section 1 of Act No. 338 of 1936 (amending Act No. 159 of 1912), broadened the City's taxing power by providing that: *"The City of New Orleans shall have the right to levy, impose and collect any and all kinds and classes of taxes or licenses or fees that may be imposed that are necessary for the proper operation and maintenance of the municipality, provided same is not expressly prohibited by the Constitution*

*of the State of Louisiana,* \* \* \**."* (Italics ours.)

In paragraph (d) of Section 1 of the above amendatory statute, the Legislature reiterated and renewed the broad grant of authority already conferred by Act No. 159 of 1912 upon the City, in these words: *"The City of New Orleans shall also have all powers, privileges and functions which by or pursuant to the Constitution of this State, have been, or could be granted to, or exercised by any city, and shall have power to pass ordinances,* and to exercise full police power in connection with any function of municipal government within the territorial limits of said city, including the right, power and authority, to pass ordinances on all subject matters, *including subject matters which the Legislature has reserved to itself the right to regulate, but has not regulated, or has not fully regulated, on which the Legislature has reserved to itself the right to legislate, but has not legislated, or has passed general or special laws which do not cover the entire subject matter,* and on any and all other subject matters without exception, regardless of whether or not the Legislature has enacted special or general laws upon the same subject matter, *subject only to the limitation that the provisions of said ordinances shall not directly conflict with the provisions of any state laws upon the same subject matter."* (Italics ours.)

■ The City of New Orleans is the largest municipality in Louisiana, having a population, according to the 1940 census, of 494,537. The population of the State, in the same census, is given as 2,363,880.

Therefore, the residents of the City of New Orleans constitute more than one-fifth of the population of the entire State. The City is located on the banks of the Mississippi River, near the Gulf of Mexico, and has the largest port in the State as well as one of the most important in the Nation, where cargoes are received from and sent to points throughout the world. The legislative charter of the City gives it the right to protect the health and safety of its inhabitants and the power to levy taxes for the safety and health of its population, as well as its development, expansion and growth. These are some of the reasons why the Legislature granted to the City of New Orleans greater taxing powers than are usually conferred on smaller municipalities. The delegation of the taxing power by the Legislature to the City of New Orleans, while plenary, is not a surrender or abandonment of its taxing power exercised in behalf of the Sovereign State, but a delegation of that power, which is not prohibited by Section 1, Article X of the Constitution of the State, which provides: "The power of taxation shall be vested in the Legislature; shall never be *surrendered,* suspended or contracted away; and all taxes shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax, and shall be levied and collected for public purposes only. \* \* \*" (Italics ours.)

The words "surrender" and "delegate" do not have the same meaning. They are not synonymous and there is a well-recognized legal distinction between them. The former means to give up, to relinquish, to

yield or resign in favor of another. The latter means entrusting power to another to act for the good of the one who authorizes him. 18 C.J. 472; 60 C.J. 1153; Webster's New International Dictionary; Century Dictionary; Black's Law Dictionary.

Clearly, the Legislature in conferring taxing power upon the City has not surrendered its taxing power because it can revoke the power entrusted to the City or modify it at its pleasure. In fact, in this very case, the respondents contend that the particular taxing power in question was not conferred but, if granted, was so extraordinary as to amount to a surrender of it, and finally, that the Legislature revoked that very power.

In Cooley on Taxation, Vol. 1, 4th Ed., Section 102, it is stated:

"* * * The power of local subdivisions of a state to tax differs from the power of a state to tax. In regard to the latter it is always to be kept in mind that the power of the state to tax is an inherent power and that any provision in the constitution in regard thereto is a limitation on that power and not a grant of power; but that the power of a county or town or municipality or other local division, to impose taxes, is wholly a delegated power so that the power to tax is limited by the scope of the delegated authority.

"There are certain rules relating to the power to tax which are equally applicable to counties, towns, and municipal corporations. So there are statutes applicable generally to taxes by such political subdivisions, without regard to the nature of the political subdivision, affecting the power to tax. In regard to counties, towns and municipal corporations, the rules applicable to all alike may be stated as follows:

"1. They have no inherent power to tax for local purposes. Any power of taxation must be delegated to them either by the constitution itself or by the legislature.

"2. *The legislature,* unless forbidden by the constitution, *may delegate the power of local taxation to such political subdivision; and it ordinarily does delegate such power,* at least to some extent." (Italics ours.)

Under the explanatory footnote (50) of this same section, we find:

"It is neither incompetent nor unusual for the State to confer upon its counties, townships, cities and villages a very general authority to tax for their purposes all the subjects of taxation, within their territorial limits as fully as the State itself taxes them."

In the case of the United States v. New Orleans, 98 U.S. 381, 392, 25 L.Ed. 225, the Supreme Court of the United States stated:

"The position that the power of taxation belongs exclusively to the legislative branch of the government, no one will controvert. Under our system it is lodged nowhere else. But it is a power that may be delegated by the legislature to municipal corporations, which are merely instrumentalities of the State for the better administration of the government in matters of local concern. When such a corporation is created, the power of taxation is vested in it as an essential attribute, for all

the purposes of its existence, unless its exercise be in express terms prohibited. For the accomplishment of those purposes, its authorities, however limited the corporation, must have the power to raise money and control its expenditure. In a city, even of small extent, they have to provide for the preservation of peace, good order, and health, and the execution of such measures as conduce to the general good of its citizens; such as the opening and repairing of streets, the construction of sidewalks, sewers, and drains, the introduction of water, and the establishment of a fire and police department. In a city like New Orleans, situated on a navigable stream, or on a harbor of a lake or sea, their powers are usually enlarged, so as to embrace the building of wharves and docks or levees for the benefit of commerce, and they may extend also to the construction of roads leading to it, or the contributing of aid towards their construction. The number and variety of works which may be authorized, having a general regard to the welfare of the city or of its people, are mere matters of legislative discretion. All of them require for their execution considerable expenditures of money. Their authorization without providing the means for such expenditures would be an idle and futile proceeding. Their authorization, therefore, implies and carries with it the power to adopt the ordinary means employed by such bodies to raise funds for their execution, unless such funds are otherwise provided. And the ordinary means in such cases is taxation. A municipality without the power of taxation would

be a body without life, incapable of acting, and serving no useful purposes."

In the case of Bellocq v. City of New Orleans, 31 La.Ann. 471, 473, which involved the issuance of an injunction to restrain the collection of a tax, this court stated:

"* * * When the legislature gave to the City the power to tax, and confided to her officers the movement of the machinery necessary to realize the tax, it cannot have been intended to invent a clog which at any moment might peremptorily stop its working. This would be offering a stone when one asked for bread. Taxes are the pabulum of government. Without that food, the political body languishes and dies. The State did not create the City, and indue it with corporate life, and in the same instant benumb and palsy those functions, without the exercise of which life is soon extinct." See also Slack v. Ray, 26 La. Ann. 674; City of New Orleans v. Turpin, 13 La.Ann. 56 and Dillon on Municipal Corporations (5 ed.) Sec. 1376.

■ . It is our opinion that plenary authority to levy, impose and collect a sales or use tax was granted to the City of New Orleans by its charter (Act No. 159 of 1912, as amended by Act No. 338 of 1936), and that this grant of authority was a delegation by the Legislature of the power to tax and not the surrender of the taxing power vested in the Legislature by the Sovereign State.

■ It is said that the tax in question is a license tax and, therefore, the City of New Orleans had no authority or was pro-

hibited from levying it under the provisions of Section 8 of Article X of the Constitution of 1921, as amended, which reads, in part, as follows:

"*License taxes* may be levied on such classes of persons, associations of persons and corporations *pursuing any trade, business, occupation, vocation or profession,* as the Legislature may deem proper. * * * No political subdivision shall *impose a greater license tax than is imposed for State purposes,* provided that this restriction shall not apply to dealers, in malt, vinous, distilled, alcoholic, spirituous or intoxicating liquors; * * *." (Italics ours.)

In Article 206 of the Constitution of 1879, the words "License taxes" first appeared and the General Assembly was authorized to levy a license tax to be collected from "persons pursuing the several trades, professions, vocations and callings," and the amount of the tax was to be determined on a graduated scale.

Article 229 of the Constitutions of 1898 and 1913 contain the same language.

In accordance with Article 206 of the Constitution of 1879, the Legislature passed Act No. 27 of 1879, the pertinent part of the title thereof reading as follows: "* * * to impose a license tax upon trades, professions and occupations for the benefit of the general fund."

Section 1 of Act No. 119 of 1880, with a similar title, enacted under the authority of Articles 206 and 207 of the Constitution of 1879, imposed a license tax upon each person "* * * pursuing any trade, profes-

sion, vocation, calling or business in the State of Louisiana."

The Legislature has from time to time consistently levied a license tax upon any person or association of persons pursuing any trade, business or occupation, vocation or profession, as appears from the provisions of Act No. 101 of 1886, Act No. 150 of 1890, Act No. 171 of 1898, Act No. 205 of 1924 and Act No. 15 of 1934, 3d Ex.Sess. Section 1 of the last-mentioned statute provides: "* * * That in addition to all other license and excise taxes imposed by other laws, there is hereby levied an annual license tax for the year 1935, and for each subsequent year, upon each person, association of persons, firm and corporation pursuing any trade, profession, vocation, calling or business, subject to license under Section 8 of Article X of the Constitution of 1921."

Under the police power, the power to license is the power to regulate, as distinguished from the power to levy a license tax to raise revenue under the taxing power. Laundry License Case, D. C. 22 F. 701; State v. Grunewald, 123 La. 527, 49 So. 162; State v. Schofield et al., 136 La. 702, 67 So. 557; City of Shreveport v. Brister, 194 La. 615, 194 So. 566; and Monsour v. City of Shreveport, 194 La. 625, 626, 194 So. 569. The two separate powers should not be confused and it is our view that the City, in the instant case, acted under the latter, or taxing power, and did not levy a license tax, which has a well-defined legal meaning in this State, i. e., an occupational license tax. A comparison of the "sales or use" tax, as set forth in the ordin-

ance in controversy, with a "license" tax shows the difference between the two taxes. The sales tax is levied upon the transaction and paid by the purchaser, user or consumer. The license tax is paid by the party granted the privilege of pursuing a business, trade, vocation, calling, occupation or profession. The dealer, under the "sales or use" tax is not taxed but is the agent of the taxing authority for collecting and remitting the tax. The buyer's, the dealer's, the user's, and the consumer's occupations are not taxed. It is not a pursuit or occupation to buy at retail tangible personal property for use or consumption. It is not a pursuit or occupation to rent or store movable property for use or consumption. Wiseman v. Phillips, 191 Ark. 63, 84 S.W.2d 91.

Some of the other prominent elements of difference between a "license" and a "sales" tax are that the former is levied on the gross annual sales of the dealer, whereas, the latter is levied on each transaction of the purchaser, user or lessee; the former is levied on the gross sales of the preceding year, the latter on each particular transaction as it is made; the former is paid during the first two months of each year in one sum, the latter throughout the year as each transaction is completed; the former must be paid by the party or dealer as a condition precedent to legally engaging in business, the latter is paid by the purchaser, user, lessee, or consumer on each separate transaction when made.

The Legislature itself has considered and treated a "license" tax as something entirely different from a "sales" or "use" tax.

Act No. 148 of 1906 and Act No. 240 of 1918 provided that the liquor license tax was property which could be sold and assigned. No one gets a property right in anything when he pays a sales or use tax, except the taxing authority, which becomes the owner of the tax collected.

A comparison of the Occupational License Tax Law (Act No. 15 of the Third Extra Session of 1934) with the State Luxury Tax Law (Act No. 75 of 1936) and the State Sales Tax Law (Act No. 2 of 1938) reveals clearly that these laws cover separate and distinct forms of taxation.

In the case of State ex rel. Guillot v. Central Bank & Trust Co., 143 La. 1053, 79 So. 857, 858, this court said:

"A license may be defined as a permit granted by the sovereign, generally for a consideration, to a person, firm, or corporation to pursue some occupation or to carry on some business which is subject to regulation under the police power of the government. Under article 229 of the Constitution [1898], the General Assembly may levy license taxes on all persons, * * * or corporations pursuing any trade, profession, or calling, with certain enumerated exceptions." (Brackets ours.) See also Levi v. City of Louisville, 97 Ky. 394, 401, 30 S.W. 973, 28 L.R.A. 480.

In the case of the City of Shreveport v. Stringfellow, 137 La. 552–555, 68 So. 951, 952, the City, in December, 1914, adopted an ordinance levying a license fee on all motor vehicles registered under Act No. 260 of 1914, a constitutional amendment. The defendant refused to pay the tax and attacked

the City's authority to levy and collect it. After the court stated that the City was without any authority under the amendment to levy and collect the tax, because the State did not delegate any power over the subject matter to any of its political subdivisions, the City Attorney then argued that the tax was a valid license tax. The court said:

"The contention of the plaintiff that the ordinance is valid as a license tax for revenue purpose is refuted by the provisions of article 229 of the present Constitution, which provides that the General Assembly may levy a license tax, 'to be collected from persons pursuing the several trades, professions, vocations and callings,' except 'clerks, clergymen, school-teachers, those engaged in mechanical, agricultural and horticultural pursuits, and manufacturers other than those of distilled alcoholic or malt liquors, tobacco, cigars and cotton seed oil,' and which declares that 'no political corporation shall impose a greater license tax than is imposed by the General Assembly for state purposes,' except in case of 'dealers in distilled, alcoholic or malt liquors.'

"It is too plain for discussion that under the provisions of said article no warrant can be found for the levy of license taxes, except on trades, professions, vocations, and callings, not specially exempted from the operation of said article."

In the case of Lionel's Cigar Store v. McFarland, 162 La. 956, 111 So. 341, 346, in referring to the foregoing case of the City of Shreveport v. Stringfellow, this court said:

"* * * The argument for the municipality was that, inasmuch as article 229 of the Constitution of 1913 declared 'no political corporation shall impose a greater license tax than is imposed by the General Assembly for state purposes,' any political corporation could impose any license tax imposed by the Legislature for state purposes; but this court held that the implied permission given to municipal corporations by article 229 of the Constitution had reference only to license taxes on trades, vocations, professions or callings."

In the case of Lionel's Cigar Store et al. v. McFarland, supra, a tax on the retail sale of tobacco under Act No. 197 of 1926 was involved. The contention was made that if the tax was "intended to be a license tax for the privilege of selling tobacco and tobacco products at retail," it violated the provisions of Section 8 of Article X of the Constitution of 1921, because the tax was not graduated according to the amount of the annual gross sales. The court pointed out that Article X of Section 8 of the Constitution did not direct how the Legislature should grade or classify a license tax and said:

"It is true the method of collecting the tobacco tax, by the sale of stamps * * * is an innovation * * * but it is not violative of any restriction in the Constitution. The tax itself, being an excise on the use of tobacco, imposing the burden directly on the consumer, is an innovation. * * * The idea of levying an excise tax on the consumption of tobacco, in the form of a license tax on the retail sale of it, is not a new one in the United States."

The complaint also posed the issue "that if this tobacco tax is a license tax, it makes (for) double taxing, because by the general license law (Act 205 of 1924) the Legislature had already imposed upon retail tobacco dealers the annual license tax imposed upon all other retail dealers." The court said:

"This tax, being an additional license tax on the business of selling at retail, would be, in a sense, double taxation on the business if the apportionment and method of collection of the tax were not arranged so as to put the burden directly upon the consumer and to make the tax, strictly speaking, an excise, or tax on the consumption of tobacco and tobacco products.

"As it is, the retail dealers merely serve as collecting agencies. It is not necessary to determine whether such double taxation would be illegal if the tax were imposed directly upon the retail dealers' business instead of being an excise levied upon the consumption of tobacco and tobacco products. As to excises, strictly so-called, it was decided in Patton v. Brady, 184 U.S. [608] 619, 22 S.Ct. [493] 497, 46 L.Ed. [713] 719, that there was no fundamental objection to the levying of such a tax more than once on the consumption of the same articles of commerce."

The Supreme Court of Pennsylvania, in the case of Blauner's, Inc., et al. v. City of Philadelphia et al., April 12, 1938, 330 Pa. 342, 198 A. 889, 890, held:

"The council of the City of Philadelphia on February 24, 1938, passed an amended ordinance, known as the city sales tax ordinance, under which a tax of 2 per cent. is levied upon all retail sales within the city limits from March 1, 1938, to December 31, 1938, with the exception of certain sales of food, drugs, newspapers, and periodicals. The plaintiffs, corporations engaged in the business of selling goods at retail in Philadelphia, brought this suit in equity against the City of Philadelphia, and its officers, to enjoin the enforcement of the ordinance. Their bill was dismissed by the court below, after it had sustained preliminary objections raising questions of law, and from the final decree entered this appeal was taken.

"The plaintiffs aver that the ordinance violates the Act of August 5, 1932, Ex.Sess., P.L. 45, 53 P.S. § 4613 et seq. (the Sterling Act), because it duplicates taxes already paid by the plaintiffs to the Commonwealth of Pennsylvania, to wit: (1) The capital stock tax; (2) the corporate net income tax; (3) the mercantile license tax. It is also asserted that the ordinance is unconstitutional in requiring the plaintiffs, as vendors, to collect the tax and to be liable for it to the city.

"The sole question is, Had the City of Philadelphia the power and authority to levy a city sales tax in the manner and form in which it was imposed? We approach consideration and determination of that question without regard to extraneous matters. We have nothing to do with the wisdom of the tax or with the purpose of its levy.

"It is admitted that the Legislature has the right and power to delegate to the city council the authority by ordinance to levy,

assess, and collect taxes for general revenue purposes. * * * A most recent case in point is that of Wilson v. Philadelphia School District, 328 Pa. 225, 195 A. 90, 113 A.L.R. 1401, in which Mr. Chief Justice Kephart reviewed the subject elaborately.

"Under the Sterling Act, supra, the city has broad powers to levy taxes for revenue purposes. It is empowered therein to levy taxes 'on persons, transactions, occupations, privileges, subjects and personal property, within the limits of such city,' excepting, however, that it may not levy 'on a privilege, transaction, subject or occupation or on personal property which is now or may hereafter become subject to a State tax or license fee.' * * *

"The subject of tax in the instant ordinance is the transaction of sale. The purchaser is made the taxpayer, and the seller the collector of the tax, for which he is compensated. Counsel for appellants argue ably that the tax is in fact on the vendor. The ordinance makes it clear that this is not so. However, as we view the case, it would make no difference which party was required to pay; the tax being on the sale itself, if the city council had the power to make the levy, and it had that power if there was no duplication, it could require either party to the sale to pay the tax. In this instance, the council saw fit to place it on the vendee.

\* \* \* \* \*

"Did the Legislature pre-empt the field sought to be covered by the city sales tax when it passed the Mercantile License Tax Act of May 2, 1899, P.L. 184, and its amendments, 72 P.S. § 2621 et seq., requiring vendors of merchandise to obtain a license to do business, for which they must pay a fee of $2 plus an additional amount determined by the volume of their business? The mercantile license tax is not, as appellants claim, a tax on sales, but is an excise upon the privilege of doing business, as this court and the Superior Court have frequently said. Thus in Com. v. Harrisburg Light & Power Co., 284 Pa. 175, 178, 130 A. 412, 413, Mr. Justice Schaffer said: 'The mercantile tax (is) a license tax for the privilege of vending merchandise.' Likewise in Com. v. Globe Furnishing Co., 324 Pa. 180, 183, 188 A. 170, 172, we said: 'The mercantile license tax is a tax on the privilege of doing business in a certain manner.' In Atlantic Refining Co. v. Van Valkenburg, 265 Pa. 456, 461, 109 A. 208, 209, quoting from Com. v. Abbotts Alderney Dairies, 62 Pa.Super. 451, 454, we said: 'The assessment is not on the sales, however, but on the dealer.' So also in Beaver County Cooperative Association's Appeal, 118 Pa.Super. 305, 311, 180 A. 98, 100, we read: 'The mercantile license tax is imposed, not upon the property or income, but upon the privilege of selling goods, wares, and merchandise, and is measured by the whole volume, gross, of business transacted annually.' To the same effect are Knisely v. Cotterel, 196 Pa. 614, 46 A. 861, 50 L.R.A. 86; Baer's Appeal, 82 Pa.Super. 414; Com. v. Pocono Mountain Ice Co., 23 Pa. Super. 267; Com. v. Bailey, Banks & Biddle Co., 20 Pa.Super. 210. The state mercantile license tax and the city sales tax are similar in that they are both excises, but the similarity goes no further. The

city tax is a levy on sales, the state tax is a levy imposed for the privilege of conducting a particular kind of business, albeit the amount of the tax is measured by gross sales. The sales tax is imposed upon the transaction whereby property is acquired; the mercantile tax is an imposition for the privilege of doing business.

\*   \*   \*   \*   \*   \*   \*

"The court below correctly decided that the city sales tax ordinance and the Mercantile License Tax Act do not tax the same subject, nor the same person, and that the field covered by the ordinance had not been preempted by the mercantile license tax."

See, also, 37 Corpus Juris pg. 166; 117 A.L.R. pp. 846–858; Merchants Refrigerating Co. v. Taylor, 275 N.Y. 113, 9 N.E.2d 799; Kesbec, Inc. v. McGoldrick, 278 N.Y. 293, 16 N.E.2d 288; Fox v. Frank, 52 Ohio App. 483, 3 N.E.2d 996; Id., 130 Ohio St. 268, 198 N.E. 873; McGoldrick v. Berwind-White Coal Co., 309 U.S. 33–43, 60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876; 46 West Virginia Law Quarterly 21, and Kresge Co. v. Bluefield, 117 W.Va. 17, 183 S.E. 601.

The Supreme Court of the United States, on February 17, 1941, in the cases of Nelson et al. v. Sears, Roebuck & Co., 61 S.Ct. 586, 85 L.Ed. ——, and Nelson et al. v. Montgomery Ward & Co., 61 S.Ct. 593, 85 L.Ed. ——, upheld the imposition of a use tax and declared that a "use tax" is an integrated part of a use or sales tax, "to remove the buyers' temptation 'to place their orders in other states in the effort to escape payment of the tax on local sales.'"

[61 S.Ct. 588, 85 L.Ed. ——.] See, also, State ex rel. Cooper v. Pape, 194 La. 890, 195 So. 346.

It is our conclusion that the "sales or use" tax levied by the ordinance in question is an excise tax and, therefore, the provisions of Section 8 of Article X of the Constitution of 1921, governing occupational license taxes, are not applicable here. In other words, the ordinance is not unconstitutional.

Plaintiffs also contend that the ordinance is unconstitutional because it is discriminatory and lacking in uniformity, and contrary to the provisions of Section 1 of Article X of the Constitution of 1921, the pertinent part of which reads as follows: "\* \* \* all taxes shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax, and shall be levied and collected for public purposes only. \* \* \*"

In the brief of counsel for plaintiffs, it is stated: "\* \* \* On a pack of cigarettes, for instance, costing 15 cents the City would collect 6⅔ per cent in taxes. This is far more than the rate of 2 per cent. \* \* \* Consequently, we contend that the Ordinance itself leads to a series of injustices and inequalities that strike it with nullity. No better illustration exists than the one alluded to above. The witness Kleinpeter is a grocery store proprietor and he buys many articles himself for his own private use and that of his family. On these articles he pays a tax and where he buys in amounts between 13¢ and 62¢, he pays 6⅔% of the value of

the article instead of 2% as the Ordinance provides. On the other hand, as a dealer selling to a poor class of people, 50% of his sales are in small quantities—less than 13¢. On these sales, he is not entitled to collect any tax. Yet he is required to return 2% of his gross sales to the City of New Orleans. It is easy to envisage such a situation as this where the dealer actually becomes a taxpayer. In fact, the dealer is dealt with harshly under the Ordinance, being made criminally responsible for any failure to collect and remit taxes. Add to this the fact that it is possible for him to be chargeable with taxes himself, and his dilemma becomes serious. This fact, together with the patent lack of uniformity otherwise in the Ordinance, we submit, strikes it with nullity, and violates Article X, Sec. 1, Const. of 1921."

Under the rules and regulations establishing the "Bracket System" for the sales or use tax, published December 26, 1940, on transactions from 1 cent to 12 cents inclusive, there is no tax, on transactions from 13 cents to 62 cents inclusive, the tax is 1 cent, on transactions from 63 cents to 99 cents inclusive, the tax is 2 cents, and on each transaction of $1 even, the tax is 2 cents plus the foregoing rates on the amount in excess of the even dollar. This "Bracket System" was unanimously and formally approved by the Commission Council on January 7, 1941, thereby amending or modifying the original ordinance in that respect. Therefore, on any transaction involving 15 cents, the tax is 1 cent. There is nothing discriminatory in the ordinance establishing an exemption against transactions from 1 cent to 12 cents because the exemption is equally in favor of all persons, firms, associations and corporations on transactions up to twelve cents. There is nothing discriminatory in the schedule graduating the tax, as all persons, firms, associations and corporations that have transactions falling in any of the particular classifications are treated alike and the ordinance is equally applicable to them. On transactions from 13¢ to 99¢ and over that amount, the tax is graduated and uniformly applied " * * * upon the same class of subjects throughout the territorial limits of the authority levying the tax. * * *"

In the case of Wilson et ux. v. City of Philadelphia et al., 330 Pa. 350, 198 A. 893, 895, it is stated:

"The only real challenge of merit in the bill is that the tax is unconstitutional for lack of uniformity, because the ordinance provides: ' * * * in computing the amount of the tax, fractions less than one-fourth of a cent of tax shall be disregarded and fractions of more than one-fourth of a cent of tax shall be computed as one cent' (section 3). The practical result of this method of levy is that on sales of 12½ cents or less the tax is not collected and on sales of any amount over 12½ cents to and including 62½ cents the tax is one cent. The reason for this is obvious; complete equality could be secured only by the coinage of tax tokens or the issue of stamps in denominations of one-fifth mill. Every purchase involving an odd number of cents would require a unit that small to compute the tax accurately

at 2 per cent. Such a solution, it seems to us, would be both oppressive and unnecessary. The learned court below very well said:

" 'The amount involved is so trifling as to be neither burdensome nor confiscatory and we might well apply the maxim: "De minimis non curat lex". Aside from that however we do not think the ordinance offends the requirement of uniformity for the rate of impost does not vary even though the actual amount collected may vary with each taxpayer. Turco Paint & Varnish Co. v. Kalodner, 320 Pa. 421, 426, 184·A. 37. It is true that the application of the rate of impost of 2% on a 15¢ purchase will only amount to .003¢ but this amount the purchaser can only pay with a penny, while if he makes a number of 15¢ purchases he does not have to pay the penny on each but only 2% on the total. But this may very well involve another fractional amount, which must also be paid with a penny. We do not however think the uniformity clause of the constitution is violated because of this result The rate of taxation is the same and it is the same for everybody.'

"There is no such thing as perfect uniformity and equality in taxation. The best that can be done, and all that is required, is that it should approximate uniformity and equality as nearly as possible. Williamsport v. Wenner, 172 Pa. 173, 182, 33 A. 544. The requirement of uniformity does not demand mathematical precision. We are certain the ordinance is not defective in this respect and that the bill was properly dismissed."

Furthermore, in the case of Lionel's Cigar Store et als. v. McFarland, supra, this court held:

"As it is well settled—and not disputed—that the limit of $5\frac{1}{4}$ mills on the dollar, and the uniformity clause, in article 10 of the Constitution, applies only to ad valorem or property taxes, levied upon the right of ownership, our conclusion that this so-called tobacco tax is not a property tax but a license tax is a conclusion that the statute levying the tax is not violative of either the first or the third section of article 10 of the Constitution."

In the instant case, it is not contended nor could it be successfully urged that the tax in question is a property or ad valorem tax.

■ The official bulletin issued and promulgated by the Commissioner of Public Finance shows that under the "Bracket System" for the collection of the sales or use tax, unanimously approved by the Commission Council on January 7, 1941, the dealer is required to report only the actual taxes collected, regardless of the percentage of those taxes to his gross receipts, which include transactions exempt from the tax. In order to make this doubly clear, the amendatory ordinance adopted by the Commission Council undubitably required the dealer to report only the tax actually collected by him from the purchaser, user or consumer. The proof in the record shows that this was being carried out in the practical application of the provisions of the ordinance under attack.

■ The attorneys for the plaintiffs, in a supplemental brief filed in this court, for the first time, raise the issue that the ordinance is unconstitutional because Section 4, paragraphs (a) and (c) thereof, provide a penalty by fine and imprisonment upon a dealer who collects and fails to remit the tax, or who advertises that he will assume and absorb the tax; and upon a taxpayer who fails or refuses to file a return with the Commissioner when required to do so by the provisions of the ordinance. It is said that the City had no constitutional authority to provide for such penalties. The City, in its supplemental brief, objects to a consideration of this point because it had never been raised by the pleadings either in the district court or in this court and, therefore, could not be judicially considered. In the alternative, the City asserts that even if the court were to hold the above paragraphs of Section 4 of the ordinance unconstitutional, it would not affect the validity and constitutionality of the ordinance, because Section 47 thereof contains a savings clause providing that, if any section or part of the ordinance is held to be invalid, it shall not affect any other part of the ordinance and that the Council would have passed the ordinance, each section or sub-section, or part of the ordinance, irrespective of the part that might be declared invalid—in other words, that the provisions of the ordinance are separable.

In the case of State v. Great Atlantic & Pacific Tea Co., 190 La. 925, 945, 183 So. 219, 226, this court·said:

"It is elementary that 'he who urges the unconstitutionality of a law must specially plead its unconstitutionality, and show specifically wherein it is unconstitutional' (City of Shreveport v. Pedro, 170 La. 351, 127 So. 865; see, also, Ward v. Leche, Governor, 189 La. 113, 179 So.`52), and that issues not raised by the pleadings are not properly before the court and can not be considered on appeal. Montgomery v. Barrow, 19 La.Ann. 169; Succession of Rhodes, 39 La.Ann. 473, 2 So. 36; State ex rel. Neyland v. Read, 50 La.Ann. 445, 23 So. 715; Neith Lodge v. Vordenbaumen, 111 La. 213, 35 So. 524; Cunningham v. Penn Bridge Co., 131 La. 196, 59 So. 119; Godchaux Sugars, Inc. v. Boudreaux & Bros., 153 La. 685, 96 So. 532; Clarke Co. v. Petivan, 161 La. 1095, 109 So. 913; Woodward, Wight & Co. v. National Box Co., 168 La. 701, 702, 123 So. 296; Succession of Price, 172 La. 606, 134 So. 907."

In the case of Causey v. Opelousas-St. Landry Securities Co., 192 La. 677, 188 So. 739, this court held that it would not consider an issue raised here for the first time attacking the constitutionality of a statute.

■ Do the provisions of Act No. 82 of 1940 repeal the grant of authority to the City to levy, impose and collect a sales or use tax?

Section 1, paragraph (f) of the City Charter (Act No. 159 of 1912), as amended by Act No. 338 of 1936, is a special law and confers upon the municipality the power "* * * to levy, impose and collect any and all kinds and classes of taxes or licenses or fees that may be imposed that are necessary for the proper operation and maintenance of the municipality, provided same

is not expressly prohibited by the Constitution of the State of Louisiana."

The Legislature of 1938 enacted Act No. 2 providing for a general State sales tax of 1 per cent throughout Louisiana. A similar right to levy the same tax but not in excess of the rate fixed by the act, under Section 15 of the statute, was expressly conferred on all cities having a population of 400,000 or more. It is quite obvious that the general law—Act No. 2 of 1938, by Section 15 thereof, conferred upon the City of New Orleans, a municipality with more than 400,000 inhabitants, the right to levy a similar sales tax without having taken into consideration the fact that the City of New Orleans already had the authority to levy such a tax under independent and special legislation, peculiarly affecting New Orleans only, i. e., Act No. 338 of 1936. While these were different laws on the same subject, they were in accord and were not inconsistent. Therefore, they must be construed together. City of New Orleans v. Poydras Orphan Asylum, 33 La.Ann. 850. The City of New Orleans treated the law in exactly that way, because prior to the adoption of Act No. 2 of 1938 imposing a State sales tax, the Legislature had enacted Act No. 75 of 1936, imposing a tax upon articles of tangible personal property, sold, leased or rented in this State, known as the "Luxury Tax Act". Section 8 thereof provided: "* * * the tax levied hereunder shall be paid by the consumer or user to the vendor." The statute did not authorize any municipality to impose a similar "Luxury Tax". The City of New Orleans, acting under the authority of Section

1, paragraph (f) of the City Charter (Act No. 159 of 1912), as amended by Act No. 338 of 1936), adopted, through the Commission Council, an ordinance whereby it levied a similar "luxury tax," which was collected for some time. No one challenged the City's right and authority to do so.

The legislative intent to grant the City the authority it now claims under Act No. 338 of 1936 is indicated by the history of that statute. It bore House Bill No. 312 of the Legislature of 1936, and Act No. 75 of 1936, the State Luxury Tax Law, was House Bill No. 547.

If the members of the Legislature at the time they considered and passed Act No. 75 of 1936 thought that the provisions of Act No. 338 of 1936 were not sufficient to authorize the City of New Orleans to levy a "luxury tax," they could have, when they later considered House Bill No. 547 (Act No. 75 of 1936), amended the bill so as to grant the necessary power. They neither inserted a provision permitting it nor prohibiting the City of New Orleans from levying a similar "luxury tax." As the provisions of House Bill 312, or Act No. 338 of 1936, gave sweeping taxing power to the City, it was unnecessary to amend House Bill No. 547 to grant power to the City of New Orleans to impose and levy a "luxury tax." Furthermore, the fact that there is no provision in Act No. 75 of 1936 (House Bill 547) prohibiting the City of New Orleans from levying a similar luxury tax, indicates and raises the presumption that the legislators thought that the proposed legislation in favor of the City's authority was ample. It also shows that the leg-

islators had no intention of prohibiting the City from levying a "luxury sales tax."

When the two statutes were enacted by the Legislature of 1936—Act No. 10 of 1934, 1st Ex.Sess., was effective and prohibited any municipality from levying any tax without express legislative designation and sanction. This act, as far as the City of New Orleans was concerned, had become inoperative because of the enactment of Act No. 338 of 1936, which after giving the City of New Orleans extraordinary taxing power, repealed all laws in conflict therewith. If there had been any doubt that Act No. 10 of the First Extra Session of 1934 had no effect upon New Orleans at the time the ordinance under attack was adopted, it is sufficient to say that the Legislature of the Regular Session of 1940 specifically repealed that statute by adopting Act No. 70 of 1940.

The Legislature of 1940 also passed Act No. 82 for the specific purpose of repealing Act No. 2 of 1938—the State Sales Tax Act "* * * including all ordinances of any municipalities passed by authority of said Act 2 of the Legislature of 1938." The plaintiffs contend that this general statute had the effect of also repealing the plenary power of taxation vested in the City of New Orleans by its charter, as amended by Act No. 338 of 1936.

The relators urge that the present sales tax ordinance is founded on the provisions of Act No. 338 of 1936, which is a special statute, and, as Act No. 82 of 1940 neither expressly nor impliedly repealed Act No. 338 of 1936, the City had the right and authority to adopt the ordinance.

Section 3 of Act No. 82 of 1940 goes no further than to repeal "* * * all laws or parts of laws as may conflict herewith, including all ordinances of any municipalities passed under authority of said Act No. 2 of the Legislature of 1938." Act No. 338 of 1936, amending Act No. 159 of 1912, is in no way mentioned. Act No. 82 of 1940 does not contain any provision prohibiting any municipality from adopting any form of taxation not prohibited by the Constitution. Act No. 82 of 1940, a general statute, appears to have for its object only the repeal of another general State law, Act No. 2 of 1938, and the ordinances of municipalities adopted thereunder. Certainly, there is no doubt that there is a complete absence of an express repeal of Act No. 338 of 1936 by Act No. 82 of 1940 and there is no prohibition contained in the latter general statute against the use of the taxing power in the former special act. The plaintiffs, therefore, must rely upon repeal by implication.

In the case of the City of Bogalusa v. Gullotta, 181 La. 159, 159 So. 309, 310, the question was whether or not the provisions of Act No. 14 of 1914 incorporating the City of Bogalusa had been repealed by Act No. 15 of 1934, a general regulatory statute on the subject of the sale of intoxicating liquors. The court said:

"We do not think that part of the charter of the city of Bogalusa prohibiting the sale of intoxicants therein was repealed by Act No. 15 of 1934. Act No. 14 of 1914, which incorporated that city, is a special act of the Legislature and Act No. 15 of 1934 is a general regulatory statute which

does not in terms repeal section 15 of the city's charter, and it is settled in this state, as elsewhere, that a general statute does not repeal by implication an earlier local or special law, unless the intent to do so clearly appears. Act No. 15 of 1934 in terms repeals only such laws as are inconsistent or in conflict with its provisions.

"In the case of Garrett and Blanks v. Aby, Mayor, 47 La.Ann. 618, 17 So. 238, 239, this court said:

" 'The legislative charter of a municipal corporation being a special act, apart from the body of general laws of the state, it cannot be repealed by a general law of the state, unless that intention clearly appears from the terms of the general act; and, that the general act shall repeal the special law, it must appear that the provisions of the former are irreconcilably inconsistent with those of the latter.'

"Welch v. Gossens et al., 51 La.Ann. 852, 25 So. 472, is a leading case touching this subject, where practically all the earlier cases are reviewed. In the Welch Case it was held, quoting paragraph 1 of the syllabus, that: 'The provisions of the legislative charter of a municipal corporation, with regard to the election of its officers, are not impliedly repealed by the provisions of a subsequently enacted general election law, which makes no mention thereof.' "

If the Legislature, in passing this general statute, Act No. 82 of 1940, had intended to repeal the special statute, Act No. 338 of 1936, it appears to us that it would have given the people of New Orleans some notice of the purpose and scope of the act, because Section 16 of Article 3 of the Constitution requires that each act of the Legislature must embrace one object, which must be set forth in its title.

In the case of New Orleans & Carrollton R. Co. v. City of New Orleans, 34 La.Ann. 429, 441, the court stated:

"We scarcely know of any subject upon which Courts are so unanimous as in their strong disfavor of repeals by implication. * * *

" 'Laws are presumed to be passed with deliberation, and with full knowledge of all existing ones on the same subject, and it is, therefore, but reasonable to conclude, that the legislature, in passing a Statute, did not intend to abrogate any prior law relating to the same subject matter, unless the repugnancy between the two is irreconcilable.' "

In the case of State ex rel. Ideal Savings Homestead Ass'n v. City of New Orleans et al., 186 La. 705, 173 So. 179, the issue was whether or not Act No. 46 of 1918, a general law, amended the provisions of the charter of the City of New Orleans (Act No. 159 of 1912, Section 42), a special law, on the subject of the "prescription of paving liens." Under the provisions of the charter, the lien remained in effect "until final payment has been made." The statute of 1918 fixed a prescriptive period of three years after the claim for paving had become due and unpaid. In holding that the general law of 1918 did not amend or repeal the provisions of Section 42, of Act No. 159 of 1912, the special law, or the City Charter, the court said:

"In the case of Kearns et al. v. City of New Orleans, 160 So. 470, the Court of Appeal of the parish of Orleans decided the identical question raised by plaintiff in the case at bar. It was held in that case that Act No. 46 of 1918 did not repeal the provisions of the city charter with reference to the duration of paving liens. Plaintiff in that case made application to this court for writs, which we refused on the ground that the ruling of the Court of Appeal was correct. We have further considered the ruling of the court in that case and are convinced that the court did not err in its holding. The reasons given for its ruling are sound and we approve them.

\*     \*     \*     \*     \*     \*

"In the Kearns Case, supra, the court cited numerous authorities holding that city charters granted by special acts of the Legislature are special laws set apart from the general body of the laws of the state, and that their provisions are not repealed by a general statute unless the intent to repeal is clear and unmistakable. In line with the Kearns Case in this respect is the case of City of Bogalusa v. Gullotta, 181 La. 159, 159 So. 309."

In the case of Kearns et al. v. City of New Orleans, 160 So. 470, 472, the Court of Appeal, Parish of Orleans, in deciding the identical question said:

"If there were no other legislative enactments to be considered, that statute might be conclusive. But it is at once apparent that that act is what is termed a general law on the subject of street paving and it is well settled that, where there is apparent conflict between a general law and a special one on the same subject, the latter must prevail in the particular locality or in the particular matter to which it applies. Even though the general law may have been passed after the special law, it does not repeal the special law by implication, but it affects it only if it refers to it expressly.

\*     \*     \*     \*     \*

"The second reason is that in the act of 1918 no reference whatever is made to the city of New Orleans, whereas both the Barber Asphalt Case [Barber Asphalt Paving Co. v. King, 130 La. 788, 58 So. 572] and the act of 1876 plainly refer only to the paving of streets within the city of New Orleans. We do not believe that, if the members of the Legislature of 1918 had in mind the definite object of fixing a prescriptive period for paving charged in the city of New Orleans, they would have set about the accomplishment of it in so obscure a way as to attempt in a general statute to repeal by implication provisions in a special statute. If the statute of 1918 was prompted by the decision in the Barber Asphalt Case, certainly some specified reference would have been made to the earlier legislation on which the Barber Asphalt decision was based."

In the case of State ex rel. City of New Orleans et al. ·v. Louisiana Tax Commission, 171 La. 211, 130 So. 46, 49, the question was whether or not the Louisiana Tax Commission should approve the tax rolls for the Parish of Orleans at the time provided in Act No. 10 of 1920, or by Act No. 231 of 1920, which fixed a later date. The court said:

"* * * Act No. 231 of 1920 is a general law providing for the creation of parish boards of equalization throughout the state * * *. Some of the sections of the act are applicable to the Parish of Orleans only, others are applicable to the other parishes only * * *. The language of section 10 shows plainly that it is not applicable to the parish of Orleans. * * * Besides, section 10 of Act 231 of 1920 is a general law; and Act No. 10 of that year is a special or local law, applicable to the parish of Orleans only. Local or special laws are not repealed by implication by general laws relating to the same subject-matter. It would be unreasonable to assume that the Legislature intended that Act No. 231 of 1920 should apply to the parish of Orleans and thereby annul the provisions of the special law enacted exclusively for the parish of Orleans, at the same session of the Legislature, and only a few days before the passage of Act No. 231."

In the case of the Third District Land Company, Ltd. v. Geary et al., 185 La. 508, 169 So. 528, 529, the issue was presented as to whether a sheriff's deed could be executed upon the assumption by the adjudicatee of taxes due and to become due as authorized by Act No. 105 of 1934, or whether the sheriff must demand payment of the tax before executing his deed as directed by Section 3620 of the Revised Statutes of 1870, which applied only to the Parish of Orleans. In holding that the provisions of Section 3620, R.S.1870, were not affected by the adoption of the general act of 1934, the court stated:

"* * * There is no reference in either of said acts [Act 88 of 1888 and Act 105 of 1934] to section 3620, R.S. [of 1870], or any expressed intention of the Legislature to repeal or affect section 3620, R.S. * *

"In the absence of some positive or clearly expressed intention of the Legislature, in a general statute, to repeal a special one upon the same subject-matter, the special statute remains unaffected and in force." (Brackets ours.)

In State v. Standard Oil Co. of Louisiana, 188 La. 978, 1054, 178 So. 601, in refusing the application for a rehearing, this court, in its per curiam, again reiterated the principals of law so well-defined and well-established—that the repeal of a statute by implication is not favored; that prior laws are repealed by subsequent laws only in case of positive enactment or clear repugnancy; and that only an irreconcilable conflict between two statutes works a repeal by implication. See, also, Buchler v. Fourroux, 193 La. 445-467, 190 So. 640 and St. Martin v. City of New Orleans, 14 La.Ann. 113.

Act No. 2 of 1938 makes no mention either in the title or body thereof of the City of New Orleans (Act No. 159 of 1912) or of Act No. 338 of 1936, Section 1, par. (f), or the City charter. Section 20 thereof provides: " * * * That all laws or parts of laws as may conflict herewith, and particularly Act 75 of 1936 [The Luxury Tax Statute], be, and the same are, hereby repealed, * * *." (Brackets ours.)

As we have already pointed out there was no conflict between Section 15 of Act No. 2 of 1938 and Act No. 338 of 1936, which had already granted plenary power to the City of New Orleans, under which it could

and did enact a sales or use tax. If Section 15 of Act No. 2 of 1938, placed any limitation on the provisions of the City Charter, it could only be that the sales tax would have to be limited to one per cent.

Act No. 2 of 1938 was repealed, first, by Section 1 of Act No. 82 of 1940 and, second, by Section 3 thereof, which provided that "* * * all laws or parts of laws as may conflict herewith, including all ordinances of any municipalities passed under authority of said Act No. 2 of the Legislature of 1938, are hereby repealed, * * *."

The ordinance of the City of New Orleans in question was not passed under the authority of Act No. 2 of 1938 but under the City Charter (Act No. 159 of 1912), as amended by Act No. 338 of 1936. If the Legislature intended to repeal Act No. 338 of 1936, it would have been a simple matter for it to have indicated such object and purpose in the title or body of the repealing statute. The fact that the Legislature heretofore, in granting the City of New Orleans its charter, Act No. 159 of 1912, as amended, had conferred upon it, because of its size and location, extraordinary powers which had not been delegated to other municipalities throughout the State, indicated that the Legislature intentionally was dealing differently with the City of New Orleans than the smaller municipalities. In refraining from mentioning the City Charter in Act No. 82 of 1940, and not placing any prohibition in the statute against any City thereafter adopting an ordinance levying a sales or use tax, it is clearly shown that the Legislature did not intend to deprive the municipality, which had hereto-

fore been granted plenary power under a special statute, of that authority by repealing Act No. 2 of 1938. This is particularly true when Act No. 2 of 1938 was not the source of the power of the City of New Orleans to adopt the sales or use tax but Act No. 338 of 1936 was the special legislative grant of authority. We find that there is no inconsistency or repugnancy between the general or repealing statute (Act No. 82 of 1940) and the special statute (Act No. 338 of 1936), and, therefore, the latter is not repealed by implication by the former. State v. McDonald, 181 La. 547, 160 So. 75; State ex rel. Texada v. Capdevielle, 140 La. 229, 72 So. 946 and State ex rel. Police Jury of Ouachita Parish v. Hanna, 142 La. 224, 76 So. 619.

Counsel for the respondents has referred us to the case of State ex rel. Chachere v. Booth et al., 196 La. 598, 199 So. 654. In that case, the question was whether or not Section 21 of Act No. 169 of 1898 (the charter of the City of Baton Rouge) regulating the procedure for the adoption of ordinances, was modified by the provisions of the later General Municipal Zoning Statute, Act No. 240 of 1926, Section 4, which provided a different and distinct procedure for the adoption of zoning ordinances. From the various provisions contained in the sections of Act No. 240 of 1926, and particularly sections 10 and 12, the court concluded that the Legislature intended that the general zoning statute should cover the whole subject and prohibited municipalities from subsequently adopting or amending zoning ordinances by any other method or procedure, except municipalities having more

than 50,000 inhabitants, which were governed by Act No. 27 of 1918. The court further held that the two sections of the statute were irreconcilable and repugnant to each other and, therefore, the latter statute governed.

In the instant case, the Legislature, in the repealing statute, obviously did not expressly cover the whole subject of "sales or use" tax by clearly repealing all legislative grants of authority to municipalities for such taxing purposes, and further, the municipalities with a special grant of such taxing power were not prohibited from using it. 59 C.J. page 936, Section 542.

For the reasons assigned, the judgment complained of, granting a preliminary injunction, is annulled at plaintiffs' costs.

O'NIELL, C. J., concurs.

LAND, J., absent.

O'NIELL, Chief Justice (concurring).

I concur in the opinion that the City of New Orleans has authority to levy a sales tax. By Act No. 338 of 1936, the Legislature conferred upon the city the right to levy any kind of tax that any municipal corporation could levy. The wording of the statute is as comprehensive in that respect as it is possible for a statute to be. That paragraph in the statute reads thus:

"The City of New Orleans shall have the right to levy, impose and collect any and all kinds and classes of taxes or licenses or fees that may be imposed that are necessary for the proper operation and maintenance of the municipality, provided same is not expressly prohibited by the Constitution of the State of Louisiana, and any ordinance adopted under this paragraph may provide for the collection of such taxes by the State tax collecting authorities, and such provisions shall be mandatory on the State tax collecting authorities. Provided that the cost of collecting any such tax shall be first deducted by the State tax collecting authority collecting the same."

It is argued for the plaintiffs that this grant of authority, "to levy, impose and collect any and all kinds and classes of taxes or licenses", did not include the authority to levy and collect a sales tax. And in support of the argument it is pointed out that when the Legislature levied the sales tax of one per cent for the State, by Act No. 2 of 1938, the Legislature declared, in section 15 of the act, that any city having more than 400,000 inhabitants might levy a similar tax, not to exceed the rate of the State tax levied by the statute. That declaration had reference, of course, to the City of New Orleans only, because New Orleans was then and perhaps will be for a long time the only city in Louisiana having more than 400,000 inhabitants. Hence it is argued for the plaintiffs that the Legislature, by declaring, in the act of 1938, that the City of New Orleans might levy a sales tax not in excess of the rate of one per cent, virtually declared that the City of New Orleans did not already have the authority to levy a sales tax under the provisions of Act No. 338 of 1936. And from this it is argued that, when the Legislature, by Act No. 82 of 1940, repealed the sales tax act of

1938, and in the repealing act declared that "all ordinances of any municipalities passed under authority of said Act No. 2 of the Legislature of 1938, are hereby repealed", the Legislature revoked the authority of the City of New Orleans to levy a sales tax. On the contrary, the only effect which the act of 1938 had upon the right of the City of New Orleans to levy a sales tax was to limit the rate of such a tax to one per cent. And the only effect which the repealing act of 1940 had upon the right of the City of New Orleans to levy a sales tax was to remove the limitation of one per cent, and to repeal or rescind the ordinance by which the city had levied the sales tax of one per cent. The authority which was conferred upon the City of New Orleans by the act of 1936 to levy a sales tax was not revoked by the act of 1938, but was thereby merely restricted to the rate of one per cent. Perhaps the reason why the Legislature referred only to the City of New Orleans, in the act of 1938, was that New Orleans was the only city in Louisiana that had such unrestricted taxing power as that which was conferred by the act of 1936.

It was conceded by the Mayor and Councilmen of New Orleans that the original ordinance of the city levying a sales tax of one per cent, under the restriction imposed by the act of 1938, was repealed or rescinded by the repealing clause in the act of 1940. The reason for that concession was that, in a subsequent ordinance, amending the original sales tax ordinance, it was declared that the original ordinance was adopted under the provisions of Section 15 of Act No. 2 of 1938. It is argued for the

plaintiffs that that declaration in the amending ordinance of the city was an admission on the part of the municipal council that the right of the city to levy a sales tax was conferred not by the act of 1936 but by Section 15 of the act of 1938. Such an admission on the part of the members of the municipal council could not have the effect of depriving the city of the authority that was conferred upon it by the act of 1936. But in fact the declaration in the repealing ordinance, that the original sales tax ordinance of the city was adopted under the provisions of Section 15 of Act No. 2 of 1938, was not equivalent to a denial that the ordinance might have been adopted as well under the provisions of the act of 1936—subject, of course, to the restriction of one per cent, which was imposed by the act of 1938.

When the sales tax act of 1938 was repealed by the act of 1940 the right of the City of New Orleans to levy a sales tax under the provisions of the act of 1936 remained the same as if neither the sales tax act of 1938 nor the repealing act of 1940 had been adopted. The city then had the authority under the act of 1936 to levy the sales tax of two per cent, which is in contest in this suit.

It is argued for the plaintiffs that, if the act of 1936 should be construed as conferring upon the City of New Orleans the unrestricted authority to levy a sales tax, the act would be violative of the declaration in Section 1 of Article 10 of the Constitution, that the power of taxation shall be vested in the Legislature and "shall never be surrendered, suspended or contracted

away". A sufficient answer to that argument is that the conferring of the power of taxation upon a municipal corporation by an act of the Legislature is not a surrender or suspension or contracting away of the taxing power of the Legislature. The Legislature did not, by the act of 1936, surrender, suspend or contract away its power to restrict or even to revoke at any time the authority of the City of New Orleans to levy a sales tax. In fact, when the Legislature itself levied a sales tax for the State, by the act of 1938, the Legislature imposed a limit of one per cent upon the rate of any sales tax which the city might levy. And, hereafter, if the Legislature considers that the unrestricted authority of the City of New Orleans to levy a sales tax is an interference with the power of the Legislature to levy and collect such a tax for the State, the Legislature may again restrict or may even revoke the authority of the City of New Orleans to levy a sales tax.

It is contended for the plaintiffs that, if the act of 1936 should be construed as conferring upon the City of New Orleans the unrestricted authority to levy a sales tax, the statute would violate the provision in Section 8 of Article 10 of the Constitution, that no political subdivision shall impose a greater license tax than is imposed for State purposes. A sufficient answer to that contention is that a sales tax is not such a license tax as is referred to in Section 8 of Article 10 of the Constitution. The license taxes referred to there are declared to be such license taxes as may be levied upon persons, associations of persons or corporations for the privilege of pursuing a trade, business, occupation, vocation or profession. It is too obvious to admit of argument that a sales tax, or use tax, as it is called, is not a license tax imposed for the privilege of carrying on a trade, business, occupation, vocation or profession. The license taxes referred to in Section 8 of Article 10 of the Constitution are called occupation taxes. The sales tax is certainly not an occupation tax. Hence it is not subject to the restriction imposed by Section 8 of Article 10 of the Constitution.

There is no good reason why we should say that the Legislature, in 1936, in granting to the City of New Orleans the right to levy and collect "any and all kinds and classes of taxes or licenses", intended to exclude the right to levy and collect a sales tax. And there is no constitutional inhibition against the Legislature's granting to the City of New Orleans the right to levy and collect a sales tax.

If a majority of the inhabitants of New Orleans are averse to paying a sales tax their recourse is to elect a municipal council pledged to rid the city of the sales tax. The remedy available to the State administration in that respect is to ask the Legislature to make this one exception to the right which was conferred upon the City of New Orleans by Act No. 338 of 1936, to levy and collect any and all kinds or classes of taxes and licenses. The courts of justice, of course, whose duty is merely to interpret and apply the law, have nothing whatever to do with the question whether the sales tax is a good thing or a bad thing for the majority of the inhabitants of New Orleans or for the State at large.