**The KANSAS CITY SOUTHERN RAILWAY COMPANY, et al.**

v.

**Shirley McNAMARA, Secretary of the Department of Revenue and Taxation, State of Louisiana.**

**Civ. A. No. 83–72–A.**

United States District Court,
M.D. Louisiana,
Division A.

Dec. 19, 1985.

Hilton S. Bell, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for plaintiffs.

Howard M. Romaine, Dept. of Revenue and Taxation, Baton Rouge, Robert Pugh, Pugh & Pugh, Shreveport, La., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN V. PARKER, Chief Judge.

This matter is an action brought by eleven railroads under Section 306 of the Railroad Revitalization and Regulatory Act of 1976 (the "4R Act"), originally 49 U.S.C. § 26c, now codified as 49 U.S.C. § 11503, to enjoin the defendant Secretary from collecting from plaintiffs the gross receipts tax levied upon public utilities, including railroads, by the provisions of La.R.S. § 47:1001, et seq. (The Louisiana transportation and communications tax).

Plaintiffs allege that the collection and enforcement of La.R.S. 47:1001–1010 against them is a violation of Section 306 of the 4R Act and seek to enjoin the collection

of this Louisiana license tax on the basis that it results in unlawful discrimination against them. Defendant denies that the Louisiana license tax is in any way discriminatory against the plaintiffs as compared to other commercial and industrial taxpayers generally. Defendant further alleges that this court does not have subject matter jurisdiction over this matter because Section 306 is applicable only to property and ad valorem taxes and not to the type of tax which is at issue in this case.

Jurisdiction is established by virtue of Section 306(1)(d) of the Railroad Revitalization and Regulatory Reform Act of 1976, 49 U.S.C. § 11503(c). This court, upon the authority of *Alabama Great Southern Railroad Co. v. Eagerton*, 663 F.2d 1036 (11th Cir.1981) has denied defendant's motion to dismiss, holding that the 4R Act is not restricted to ad valorem taxes but reaches all manner of taxes. 563 F.Supp. 199. See also, *Richmond, Fredericksburg & Potomac Railroad Co. v. Dept. of Taxation*, 762 F.2d 375 (4th Cir.1985); *Burlington Northern Railroad Co. v. Bair*, 766 F.2d 1222 (8th Cir.1985); *Trailer Train Co. v. Bair*, 765 F.2d 744 (8th Cir.1985); *Atchison, Topeka & Santa Fe Railway Co. v. Bair*, 535 F.Supp. 68 (S.D.Iowa 1982); and *Ogilvie v. State Board of Equalization*, 657 F.2d 204 (8th Cir.1981). That ruling is the "law of the case" and the court now faces the thorny question of whether the tax is discriminatory and if so, what must be done about it.

The Louisiana statute imposes a tax of two per cent of gross receipts from intrastate business upon a small group of "public utilities," including railroads, "for the privilege of engaging in such business in this state."[1] Section 306 of the 4R Act expressly declares that discriminatory state taxation of railroads constitutes an undue burden upon commerce and it expressly forbids a state or political subdivision from imposing any ad valorem tax upon rail transportation property which is discriminatory as compared to "all other commercial and industrial property," and subsection (d) further prohibits:

(d) The imposition of any other tax which results in discriminatory treatment of a common carrier by railroad subject to this chapter[2].

---

1. The statute provides:

La.R.S. 47:1001 Imposition of Tax

Every person owning or operating, or owning and operating, any public utility in this state as defined in this Part, shall, in addition to all other taxes and licenses levied and assessed in this state, pay a license tax, for the privilege of engaging in such business in this state, of two per centum (2%) of the gross receipts from its intrastate business.

La.R.S. 47:1003. Definitions

(1) "Public Utility" means railroads and railways, sleeping cars, motor freight lines, express companies, telephone companies, telegraph companies, boat or packet lines, and pipe lines, as herein defined.

2. The complete text of Section 306 of the 4R Act, as originally enacted, reads:

Pub.L.No. 94–210, § 306, 90 Stat. 54 (February 5, 1976).

§ 306. Discriminatory taxation by States, political subdivisions, or governmental entities or persons acting on behalf of States or subdivisions—Particular acts unlawful

(1) Notwithstanding the provisions of section 302(b) of this title, any action described in this subsection is declared to constitute an unreasonable and unjust discrimination against, and an undue burden on, interstate commerce. It is unlawful for a State, a political subdivision of a State, or a governmental entity or person acting on behalf of such State or subdivision to commit any of the following prohibited acts:

(a) The assessment (but only to the extent of any portion based on excessive values as hereinafter described), for purposes of a property tax levied by any taxing district, of transportation property at a value which bears a higher ratio to the true market value of such transportation property than the ratio which the assessed value of all other commercial and industrial property in the same assessment jurisdiction bears to the true market value of all such other commercial and industrial property.

(b) The levy or collection of any ad valorem property tax on transportation property at a tax rate higher than the tax rate generally applicable to commercial and industrial property in the same assessment jurisdiction.

(d) The imposition of any other tax which results in discriminatory treatment of a common carrier by railroad subject to this chapter.

Judicial relief; limitations

(2) Notwithstanding any provision of section 1341 of Title 28, or of the constitution of laws of any State, the district court of the United States shall have jurisdiction, without regard to

■ The issue of whether this court has subject matter jurisdiction over the claims involved in this lawsuit has continually been called into question by the defendant, even after this court's ruling on this issue. Defendant argues that because the Louisiana license tax on public utilities, including railroads, pre-dated the 4R Act, it is not a tax "imposed" upon the railroads implying that the word "imposed" connotes a future event, rather than a condition already in existence. The history of the statute refutes this contention, since its effective date was set for three years after its enactment, in order to allow the states to revise any taxes which might contravene the statute. If the word "impose" were meant to apply only to future acts, this time period would have been unnecessary. Further, this interpretation ignores the intent of the statute, which clearly was intended by the Congress to abolish discriminatory tax schemes which were already in existence and which were unfairly burdening railroads and interstate commerce.

The matter has been tried on the merits and most of the salient facts have been stipulated although both sides produced expert witnesses at the trial. The stipulations are of record and need not be repeated here. All factual statements herein come from the stipulation, unless otherwise indicated.

Each of the eleven plaintiffs is a common carrier railroad subject to the jurisdiction of the Interstate Commerce Commission and each is engaged in intrastate, as well

amount in controversy or citizenship of the parties, to grant such mandatory or prohibitive injunctive relief, interim equitable relief, and declaratory judgments as may be necessary to prevent, restrain, or terminate any acts in violation of this section, except that—

(a) such jurisdiction shall not be exclusive of the jurisdiction which any Federal or State court may have in the absence of this subsection;

(b) the provisions of this section shall not become effective until 3 years after February 5, 1976;

(c) no relief may be granted under this section unless the ratio of assessed value to true market value, with respect to transportation property, exceeds by at least 5 per centum the ratio of assessed value to true market value, with respect to all other commercial and industrial property in the same jurisdiction;

(d) the burden of proof with respect to the determination of assessed value and true market value shall be that declared by the applicable State law; and

(e) in the event that the ratio of assessed value of all other commercial and industrial property in the assessment jurisdiction to the true market value of all such other commercial and industrial property cannot be established through the random-sampling method known as a sales assessment ratio study (conducted in accordance with statistical principles applicable to such studies) to the satisfaction of the court hearing the complaint that transportation property has been or is being assessed or taxed in contravention of the provisions of this section, then the court shall hold unlawful an assessment of such transportation property at a value which bears a higher ratio to the true market value of such transportation property than the assessed value of all other property in the assessment jurisdiction in which is included such taxing district and subject to a property tax levy bears to the true market value of all such other property, and the collection of any ad valorem property tax on such transportation property at a tax rate higher than the tax rate generally applicable to taxable property in the taxing district.

Definitions

(3) As used in this section, the term—

(a) "assessment" means valuation for purposes of a property tax levied by any taxing district;

(b) "assessment jurisdiction" means a geographical area, such as a State or a county, city, township, or special purpose a district within such State which is a unit for purposes of determining the assessed value of property for ad valorem taxation;

(c) "commercial and industrial property" or all other commercial and industrial property" means all property, real or personal, other than transportation property and land used primarily for agriculture purposes or primarily for the purpose of growing timber, which is devited to a commercial or industrial use and which is subject to a property tax levy; and

(d) "transportation property" means transportation property, as defined in regulations of the Commission, which is owned or used by a common carrier by railroad subject to this chapter or which is owned by the National Railroad Passenger Corporation.

Feb. 4, 1887, c. 104, Pt. 1, § 28, as added Feb. 5, 1976, Pub.L. 94–210, Title III, § 306, 90 Stat. 54, and amended Pub.L. 94–555, Title II, § 220(o), Oct. 19, 1976, 90 Stat. 2630.

The 4R Act was subsequently revised and redesignated 49 U.S.C. § 11503. (Pub.L. 95–473, Oct. 17, 1978, 92 Stat. 1445.) References to the 4R Act in this opinion will cite the original text.

as interstate, transportation in Louisiana. Each plaintiff railroad is subject to and annually pays state income taxes imposed by LSA–R.S. 47:21 et seq., state general sales and use taxes imposed by LSA–R.S. 47:301 et seq., the corporate franchise tax imposed by LSA–R.S. 47:601 et seq. and local (municipal and parochial) ad valorem taxes on its property located in Louisiana (the state does not currently levy an ad valorem tax although the power for such levy exists, LSA–Const. Art. 7, Sec. 19), as well as local general sales and use taxes which are levied in some localities. The amounts paid by each plaintiff for each tax over a several year period has been stipulated by the parties.

Each plaintiff is also subject to the Louisiana tax on transportation and communication utilities levied by LSA–R.S. 47:1001 et seq. The amounts paid by each plaintiff railroad over a period of several years has been stipulated. Since commencement of this action, under an agreement with the Secretary, plaintiffs have been filing returns but not paying the tax, and the parties have stipulated the amounts due for each year subsequent to the filing of this action. The issue before the court is whether that tax is discriminatory within the meaning of Section 306 of the 4R Act.

█ In order to determine whether an action discriminates against a group or class, the effect of the action must be compared to the effect upon others. Not surprisingly, the parties do not agree as to the proper group or class to which the railroads should be compared. Plaintiffs insist that they must be compared to all other commercial and industrial taxpayers, while defendant asserts that the railroads should be compared only to those other utilities which are also subject to the transportation and communications tax. Businesses other than railroads which are subject to that tax include bus and motor freight lines, express companies, telephone companies, telegraph companies, packet lines and pipelines. LSA–R.S. 47:1003(1). If defendant's selection of comparison class is correct, then the game is over at the outset, since it is apparent that the tax is levied uniformly upon the gross receipts of all those subject to the transportation and communication tax. While the ad valorem tax provisions of § 306(1)(a), (b) and (c) make it plain that for ad valorem tax purposes, the railroads are to be compared to all other commercial and industrial taxpayers, the provisions of § 306(1)(d), with which we are here concerned, have no such clear mandate. On remand, the district court in *Alabama Great Southern Railway Company v. Eagerton*, 541 F.Supp. 1084 (M.D.Ala.1982), concluded that the railroad tax burden should be compared to the burden upon other commercial and industrial taxpayers that are subject to the same type of tax. This court comes to the same conclusions. The plain intent of the statute is that state taxation upon railroads shall be upon an equal footing with other commercial and industrial taxpayer generally. The small number of "public utilities" subjected to the transportation and communication tax does not represent the class of commercial and industrial taxpayers generally. In order to measure discriminatory tax treatment then the tax burden upon the railroads under the transportation and communications tax should be compared to the burden imposed upon other commericial and industrial taxpayers which pay the same type of tax.

█ Defendant then suggests that, since the transportation and communications tax is measured by gross receipts, it is the same as the general sales and use tax levied upon the gross sales price of consumer transactions. Thus, defendant would argue that the court should consider that rail transportation services are not subject to the Louisiana sales and use tax and would have the court compare the burden of the transportation and communications tax upon the railroads with that of the general sales and use tax upon the "average" commercial and industrial taxpayer. Defendant's argument lacks merit.

The transportation and communications tax is imposed "for the privilege of engaging in such business in this state." LSA–

R.S. 47:1001. It is therefore a business license tax. The tax is paid by the business upon which it is levied. The general sales and use tax is levied upon individual consumer transactions and the buyer pays the tax. While the sales tax is collected from the buyer by the seller or dealer, it is clear that the sales tax is levied upon the buyer (or the renter or the person who brings a product into the state for use and consumption), not upon the dealer. As Louisiana's courts have long recognized, business license taxes and general sales and use taxes are different types of taxes. See *Mouledoux v. Maestri*, 197 La. 525, 2 So.2d 11 (La.1941). The only meaningful comparison regarding general sales tax would be to compare the rate paid on similar transactions by each group of taxpayers; that is to say, do other commercial and industrial taxpayers pay sales tax at the same rate on purchases of equal amounts? The answer is obviously, yes, since the tax is the same percentage of the sales price without regard to the identity of the purchaser (taxpayer) and that tax discriminates against no one.

The court concludes that only the transportation and communications tax is at issue, that the tax is a business license or privilege tax and that the burden of that tax upon the railroads should be compared to the burden imposed by similar business license taxes upon other commercial and industrial taxpayers. The court thus rejects the Secretary's argument that the court should consider "actual economic impact" of the tax, or should consider the total tax burden upon railroads compared to the total tax burden upon other taxpayers in Louisiana.

By Section 306(1)(d), the Congress forbids "any other tax which results in discriminatory treatment." That language requires that the court focus upon the impact of the particular tax, in this case, the transportation and communications tax.

Arguably, the additional corporate franchise tax levied upon natural gas pipelines by LSA–R.S. 47:1031 et seq. could be considered a business license tax similar to that imposed by the transportation and communications tax because it is a tax "for the privilege of exercising their franchises or charters ... in this state." Since that tax is levied only upon natural gas pipelines, not upon all commercial and industrial taxpayers, and the Congress has not seen fit to confer upon natural gas pipelines the same protection from state taxation which is granted to the railroads under the 4R Act, we are not concerned with the additional natural gas pipeline tax.

■ The only other business license tax levied in Louisiana which is comparable to the transportation and communications tax is commonly referred to as the occupational license tax. Although the state has not itself levied such a tax for several years, LSA–R.S. 47:341 et seq. prescribes the rates and authorizes each local governmental subdivision to levy an annual tax upon, "each person pursuing a trade, profession, vocation, calling, or business." Railroads have not been taxed under the occupational license tax, which is clearly a license tax for the privilege of engaging in business. The occupational license tax is levied upon other commercial and industrial taxpayers. Different businesses are taxed at different rates prescribed by the statute. The heaviest tax burden imposed upon any taxpayer is that levied upon "all other businesses" by LSA–R.S. 47:395. That section prescribes brackets based upon gross annual receipts (the lowest bracket is, at least zero dollars and not more than $3,000, taxed at $5, and the highest is $2,500,000 or more, taxed at $7,500). The transportation and communications tax is measured by two percent of gross receipts with no limitation or maximum. A railroad which grosses $2,500,000 pays a tax of $50,000 (2.5 million X 2%). The next most heavily taxed commercial or industrial enterprise grossing 2.5 million dollars pays only $7,500 for the privilege of engaging in business. The transportation and communication tax levied upon the railroads is significantly higher at each level than is the tax levied upon other commercial and industrial taxpayers by § 395. This can be demonstrated by

simply examining the brackets prescribed by § 395, multiplying 2% by each gross specified and comparing the tax due under the two statutes. The parties have stipulated as to the actual amount of gross receipts and transportation and communications tax owed by each of the eleven plaintiff railroads for the years 1979–83 and the following table includes that stipulation and also shows the amount which would be due by other commercial and industrial taxpayers which are subject to the occupational license tax.

TABLE

| Railroad | Intrastate Gross Receipts | T&C Tax | O.L. Tax |
|---|---|---|---|
| KCS | | | |
| 1979 | $ 5,419,700 | $108,394 | $7,500 |
| 1980 | 5,596,250 | 111,925 | 7,500 |
| 1981 | 6,434,950 | 128,699 | 7,500 |
| 1982 | 5,820,500 | 116,410 | 7,500 |
| 1983 | 7,224,200 | 144,484 | 7,500 |
| L&A | | | |
| 1979 | 8,657,150 | 173,143 | 7,500 |
| 1980 | 8,245,200 | 164,904 | 7,500 |
| 1981 | 10,066,350 | 201,327 | 7,500 |
| 1982 | 9,987,750 | 199,755 | 7,500 |
| 1983 | 8,584,150 | 171,683 | 7,500 |
| MoPac | | | |
| 1979 | 11,804,750 | 236,095 | 7,500 |
| 1980 | 13,126,350 | 262,527 | 7,500 |
| 1981 | 13,503,400 | 270,068 | 7,500 |
| 1982 | 15,366,450 | 307,329 | 7,500 |
| 1983 | 14,091,000 | 281,820 | 7,500 |
| ICG | | | |
| 1979 | 11,652,300 | 233,046 | 7,500 |
| 1980 | 14,834,750 | 296,695 | 7,500 |
| 1981 | 14,602,200 | 292,044 | 7,500 |
| 1982 | 12,770,100 | 255,402 | 7,500 |
| 1983 | 13,692,150 | 273,843 | 7,500 |
| SoPac | | | |
| 1979 | 5,517,600 | 110,352 | 7,500 |
| 1980 | 4,144,500 | 82,890 | 7,500 |
| 1981 | 5,689,650 | 113,793 | 7,500 |
| 1982 | 3,553,150 | 71,063 | 7,500 |
| 1983 | 3,844,400 | 76,888 | 7,500 |
| SSW | | | |
| 1979 | 110,900 | 2,218 | 300 |
| 1980 | 240,700 | 4,814 | 650 |
| 1981 | 77,650 | 1,553 | 200 |
| 1982 | 41,500 | 830 | 115 |
| 1983 | 50,100 | 1,002 | 150 |
| AGS | | | |
| 1979 | 231,650 | 4,633 | 650 |
| 1980 | 127,850 | 2,557 | 300 |
| 1981 | 103,550 | 2,071 | 300 |
| 1982 | 78,500 | 1,570 | 200 |
| 1983 | 90,450 | 1,809 | 200 |
| LSR | | | |
| 1979 | 56,000 | 1,120 | 150 |
| 1980 | 54,250 | 1,085 | 150 |
| 1981 | 71,300 | 1,426 | 150 |
| 1982 | 41,100 | 822 | 115 |
| 1983 | 55,400 | 1,108 | 150 |
| NOTC | | | |
| 1979 | 183,600 | 3,672 | 450 |
| 1980 | — | — | — |
| 1981 | — | — | — |
| 1982 | — | — | — |
| 1983 | 21,950 | 439 | 60 |
| Santa Fe | | | |
| 1979 | 173,000 | 3,460 | 450 |
| 1980 | 206,450 | 4,129 | 650 |
| 1981 | 178,250 | 3,565 | 450 |
| 1982 | 128,850 | 2,577 | 300 |
| 1983 | 158,100 | 3,162 | 450 |
| Seaboard | | | |
| 1979 | 111,450 | 2,229 | 300 |
| 1980 | 80,700 | 1,614 | 200 |
| 1981 | 175,150 | 3,503 | 450 |
| 1982 | 102,650 | 2,053 | 300 |
| 1983 | 36,300 | 726 | 75 |

This court can come to no other conclusion but that the tax burden upon railroads for the privilege of doing business in Louisiana is significantly greater than the tax burden upon other commercial and industrial taxpayers for exercising the same privilege. Obviously, the larger the gross receipts, the greater the disparity, but at every level the disparity is significant.

It should be noted that Louisiana has 64 parishes and several hundred villages, towns, and cities, each of which is authorized to levy an occupational license tax upon those doing business within their respective jurisdictions. Each of the plaintiff railroads does business in more than one parish but each pays only one annual transportation and communications tax to the state which "licenses" it to do business in every part of the state. However, there is no set of circumstances involving multiple business locations or multiple occupational license taxes which will vary the disparity

between the burden upon the railroads and the burden upon other commercial and industrial taxpayers. This is so because at every level of gross receipts except those less than $250 (250 X 2% = $5, the minimum tax specified in § 395), the rate of the occupational license tax is substantially less than the 2% rate specified by the transportation and communications tax. Practically speaking, a taxpayer liable for the transportation and communications tax will pay significantly more in every instance than another taxpayer with the same level of gross receipts who pays under the occupational license tax. The tax burden for the privilege of doing business in Louisiana thus falls unequally upon the railroads. The Congress in § 306(1)(d) prohibits "any other tax which results in discriminatory treatment." The transportation and communications tax results in discriminatory treatment of each of these eleven plaintiffs, as the stipulated facts clearly demonstrate.

■ Turning to the question of remedy, the 4R Act authorizes injunctive relief to restrain any violation of § 306(2)—"district courts ... shall have jurisdiction ... to grant such mandatory or prohibitive injunctive relief ... as may be necessary to prevent, restrain or terminate any acts in violation of this section...."

In cases involving assessments and ad valorem taxes, the 4R Act, § 306(2)(c), permits injunctive relief only when, "the ratio of assessed value to the true market value ... exceeds by at least 5 per centum the ratio of assessed value to true market value...." This court has previously construed the limitation in § 306(2)(c) as a threshold requirement for injunctive relief, reasoning that the Congress was not concerned with insignificant variances in state assessments or taxation. *Louisville & N.R. Co. v. Louisiana Tax Com'n*, 498 F.Supp. 418, 423 (M.D.La.1980). While we do not here deal with assessment or ad valorem taxation, the court considered the question of whether there may be some threshold discrimination required for relief under § 306(1)(d). Certainly the Congress

was not concerned about de minimus differences in tax burdens upon railroads and de minimus differences would not constitute discrimination. Without attempting to define the precise point at which an insignificant difference might change into prohibited discrimination, the court finds that the facts of this case establish significant discrimination as to each of the eleven plaintiff railroads. Accordingly, plaintiffs are entitled to injunctive relief.

There will be judgment granting a preliminary injunction against the Secretary. The injunction must, however, be precisely drawn so as to protect plaintiffs only from that taxation which is clearly prohibited by the 4R Act and the injunction should not impede the state from levying and collecting a non-discriminatory business license tax upon the railroads. Initially the court leans in the direction of language which would enjoin the Secretary from levying and collecting any tax under LSA–R.S. 47:1001 et seq. from any plaintiff which would exceed the highest amount that would be due under the occupational license tax, LSA–R.S. 47:341 et seq. by any other commercial or industrial taxpayer having the same level of gross receipts. The court requests that counsel confer with each other and attempt to agree upon the form of the judgment.

